### R. ISBELL ET AL. v. KENYON-WARNER DREDGING COMPANY.

#### No. 4009.   Decided April 30, 1924.

#### (261 S. W., 762.).

**1.—Jurisdiction—Amount in Controversy—Amendment.**

An amended petition speaks as of the date of the filing of the original, in determining the amount in controversy, where it asserts the same cause of action, but seeks additional damages therefor; but it speaks from the date of the amendment so far as it sets up a new cause of action.   (P. 531).

**2.—Same.**

Where the amendment repeats the same cause of action and resulting damages, but also sets up new matter and damages resulting therefrom, aggregating an amount in excess of the jurisdiction of the court, the jurisdiction over the original cause of action and damages therefrom, which were within the jurisdictional amount, is not lost by the amendment.   Ft. Worth & D. C. Ry. Co. v. Underwood, 100 Texas, 285;   and other cases reviewed.   (Pp. 532, 533).

**3.—Sequestration—Replevy Bond—Damages—Amount in Controversy.**

The power of the court issuing a writ of sequestration to render judgment in accordance with the terms of the replevy bond for the value of the use of the sequestered property while held under such bond is a statutory right, not dependent on any pleading of plaintiff seeking such relief. It may exceed in amount the ordinary limit of the jurisdiction of the court. (Pp. 533, 534).

**4.—Same—Jurisdiction—Amount in Controversy—Constitution.**

Article 5, section 16, of the Constitution, which defines and limits the jurisdiction of the County Court as to the amount in controversy, grants it also the power to issue "all writs necessary to enforce the jurisdiction of such court."   It is from the latter clause that the court derives the power to issue the writ of sequestration (borrowed from the Louisiana practice act) and pursue the procedure, including that of replevy by defendant and summary judgment against all the obligors in the replevy bond, upon judgment for the plaintiff in the suit.   (Rev. Stats., arts. 1713, 1772, 7094, 7103-7106).   (Pp. 534, 535).

**5.—Same.**

The constitutional limitation as to the jurisdiction of the courts as to amount in controversy in "all civil cases," is to be distinguished from the jurisdiction conferred over "writs necessary to the enforcement of the jurisdiction."   In the latter case the jurisdictional amount is determined by the jurisdiction of the court over the "civil case," and not by the amounts involved or judgments to be rendered under the statutory proceedings au-

thorized upon writs necessary to enforce the jurisdiction in such "civil case." The course of legislation and of judicial decision in regard to writs of injunction, attachment, and other writs necessary to enforce jurisdiction is here reviewed.   (Pp. 535-541).

**6.—Same—Case Stated.**

Action was in County Court for recovery of specific personal property (dredging machinery) and its rental value while withheld from plaintiff, laying damages at less than $1000. Plaintiff had writ of sequestration for the property, and defendant retained its possession by giving a replevy bond to answer for the property and the rental value thereof while withheld. An amended petition sought damages exceeding $1000, being for the value of the property and $2.50 per day as its rental value while retained by defendant, and had judgment against defendant and the sureties on his replevy bond for $750. as its value, and against defendant for $1049.50 damages for rental value, of which $765 was rendered also against his sureties on the bond. *Held* that the County Court, had jurisdiction, by virtue of the sequestration and replevy, to render such judgment, though in excess of its jurisdictional amount in "Civil Cases." (Pp. 530-542).

Question certified from the Court of Civil Appeals for the Sixth District, in an appeal from Red River County.

· *T. T. Thompson* and *King, Mahaffey & Wheeler*, for appellants.

The County Court of Red River County, Texas, as is apparent from the face of the record herein, did not have jurisdiction to try and determine the suit of the appellees, Kenyon-Warner Dredging Company, against these appellants, because the value of the property sued for, together with the amount sought to be recovered as rents or damages for the use thereof, far exceeded $1,000.00.

*Dodd & Chambers*, for appellees.

We respectfully submit that the question certified to this Honorable Court should be answered in the affirmative, and in support of their position call attention to the following authorities: Ft. worth & D. C. Ry. Co. v. Underwood, 100 Texas, 284; 99 S. W., 92; Siensheimer & Co. v. Maryland Motor Co., 157 S. W., 228; Adair v. Stallings, 165 S. W., 140; Klabunde v. Vogt Hdw. Co., 182 S. W., 715; Sulzberger v. Hille, 187 S. W., 992; Hegman v. Roberts, 201 S. W., 268; Stump v. F. A. Officer & Co., 250 S. W., 308; Arts. 7104-7106 Vernon's Statutes.

As to the test of jurisdiction see: Dwyer v. Bassett, 63 Texas, 274; Gulf T. & W. Ry. Co. v. Lunn, 141 S. W., 538.

MR. JUDGE STAYTON delivered the opinion of the Commission of Appeals, Section B.

Certified question from the Court of Civil Appeals for the Sixth Supreme Judicial District, in an appeal from Red River County.

The statement and question arising, as certified by the Court of Civil Appeals, are as follows:

"The above entitled suit, by appellee against appellants, commenced in the county court of Red River County December 8, 1921, and now pending on appeal in this court, was to recover the possession of a "dragline bucket" or its value, alleged to be $750, $122 as the rental value of the bucket, at a rate agreed upon, to October 18, 1921, and $125 as the reasonable rental value thereof from said October 18, 1921, to said December 8, 1921.

"A writ of sequestration issued at appellee's instance was levied on the bucket December 14, 1921, but appellants retained the possession thereof by means of a replevy bond.

"The case was tried on appellee's first amended original petition, filed February 2, 1922, in which a like recovery as that prayed for in the original petition was sought, and in addition thereto the reasonable rental value of the bucket, alleged to be '$2,50 per day straight time,' from said December 8, 1921, 'until the termination of this suit.' The power of the court to hear and determine the case was questioned by an exception in appellants' answer on the ground that it appeared on the face of the petition 'that the matter in controversy was not within the jurisdiction of the court.'

"The trial resulted in a judgment (rendered October 24, 1922) in appellee's favor against appellants for $750 as the value of the bucket and for $1049.50 'as the damages or rents' appellee was entitled to recover 'for the detention of the bucket.'

"Appellants having perfected an appeal to this court insist here, as they did in the trial court, that that court 'did not have jurisdiction to try and determine the suit because the value of the property sued for, together with the amount sought to be recovered as rents or damages for the use thereof, far exceeded $1000.'

"The amount sued for in the original petition being less than $1000, this court thinks the county court had jurisdiction of the case, notwithstanding the amount put in controversy by the amended petition exceeded $1000; but a majority of the members of the court think the county court was without power to render judgment for a sum in excess of $1000. The conclusion reached by the majority is in conflict with the conclusion reached by the Court of Civil Appeals for the Third District in J. F. Siensheimer & Co. v. Maryland Motor Car Ins. Co., 157 S. W., 228. Because of the conflict (Article 1623, Vernon's Statutes) and because it deems it advisable to do so (Article 1619, Vernon's Statutes), this court hereby certifies to you for decision a question as follows:

Did the county court of Red River County have power to render judgment in appellee's favor against appellants for a sum in excess of $1000?"

Appellants object that the County Court had no power to render a judgment for any sum whatever because its jurisdiction was divested by the amendment. As this question is necessarily within the one certified, it will be investigated first.

The original petition showed the matter in controversy to be of such amount as to lie within the range of the constitutional jurisdiction of the County Court; at the time it was filed, the total alleged value of the bucket and of the rents was $997.00. Hence, jurisdiction attached originally, because the petition is the test of that question. Hunter v. Oelrich, Dallam, 358; Dwyer v. Bassett, 63 Texas, 276, and cases cited; Ft. W. & D. C. v. Underwood, 100 Texas, 285.

In determining whether the amendment served to put an end to the jurisdiction that had already attached, due importance will be given to the evident fact that this second pleading repeated the allegations of the first, but added allegations looking to an additional recovery.

There is a general principle that an amended petition is of the same rank as the petition it amends, and takes its place. It was, accordingly, held in the last case above cited that the filing of an amended petition in the County Court asking for $940.40 with interest as damages from the date of the injury, did not deprive the court of jurisdiction although the interest, calculated to the date upon which the amendment was filed and added to the principal, increased the total to more than $1000.00. The basis of the decision was, that for most purposes, including that of determining the jurisdiction of a trial court, an amended petition speaks from the date of the filing of the original petition. An exception to that rule was also indicated. When the amended petition sets up a new cause of action, it does not relate back, but speaks from the date upon which the amendment itself is filed. This is because an amended petition which presents a new cause of action, instead of the old one, amounts to the beginning of a new suit. Ayres v. Cayce, 10 Texas, 107.

However, where the amended petition retains the old suit, as in the present case, and presents, as well an additional cause of action, it speaks from the date of the filing of the original petition as to the old suit and from the date of the filing of the amendment as to the additional cause of action. Bigham v. Talbot & Cropper, 63 Texas, 271; Telfener v. Dillard, 70 Texas, 139.

In view of the possibility that the detention of another's personal property might be viewed as a continuing wrong which inflicts a continuing injury by constantly depriving the owner of its possession and use, thus not only augmenting the damages but augmenting and repeating the injury, the question of whether a new or additional cause of action was set up by the amended petition in this case, naturally suggests itself. No solution of this question is thought to be nec-

essary. The principles, already noticed, when applied to appellee's case, demonstrate that, whatever was set up in the amended petition, as long as the cause of action stated in the original petition was retained, the court had jurisdiction of that cause of action regardless of whether the new matter was a new cause of action or not. If the new matter was not a new cause of action, the amending allegations related back entirely and spoke as from the date of December 8, 1921, asserting a matter in controversy of not more than $1000.00, in that the alleged damages, as of that date, added to the alleged value of the bucket, only totaled $997.00. If the new matter, on the other hand, was a new cause of action,: it did not interfere in any way with the suit already in progress. The repetition of the old suit related back. The new matter, if it set up a new cause of action, did not; and though it might not have been sustainable in whole or in part for lack of jurisdiction over it, that situation, if true, did not deprive the court of jurisdiction over the old suit.

The general rule, to which this case appears to be no exception, is that where jurisdiction is once lawfully and properly acquired, no subsequent fact or event in the particular case serves to defeat the jurisdiction. Ft. W. & D. C. Ry. Co. v. Underwood, 100 Texas, 285; Mohrhardt v. S. P. & T. N. Ry. Co., 2 App. Civ. Cas. Sec. 322; Ross v. Anderson, 1 App. Civ. Cas. Sec., 1032; Finch v. Baskerville, 85 N. C., 205; Ablovich v. Greenville National Bank, 95 Texas, 433; Hoffman v. B. & T. Assn., 85 Texas, 410; Braggins v. Holekamp, 68 S. W., 57; Shanklé v. Ingram, 133 N. C., 259; Dyett v. Harney, 53 Colo., 381; Lassiter v. Wilson, 207 Ala., 669, 93 So., 598; Wells on Jurisdiction, 65.

This doctrine underlies the Underwood case, which has already been stated. Several of the other authorities above cited may be also noticed by way of illustration.

In Mohrhardt v. S. P. & T. N. Ry. Co., 2 App. Civ. Cas., Sec. 322, which on a related point was approved afterward in Security Co. v. National Bank, 93 Texas, 579, two suits were consolidated in the County Court, bringing the total amount in controversy in the consolidated case to a figure beyond the jurisdictional limit. Later, motion to dismiss was granted. The Court of Appeals held this ruling to be error: and the judgment was reversed and remanded instead of being dismissed.

In Finch v. Baskerville, 85 N. C., 205, it appeared that a probate court had jurisdiction of a partition proceeding. An amendment was filed, setting up an additional cause of action over which a court of equity, alone, would have had jurisdiction. The court said that the legal incapacity of the trial court to take cognizance of the matters embraced in the new cause of action introduced, and for that reason demurrable, did not deprive it of jurisdiction which it already possessed to proceed with the other; and that the amendment could be

deemed "an inoperative surplusage, needlessly and uselessly added."

Another case, among those above cited, is Ross v. Anderson, 1 App. Civ. Cas. Sec., 1032. It was one where, in an appeal from the Justice to the County Court, the plaintiff had amended by setting up an additional cause of action which increased his demand to an amount exceeding the jurisdiction of the Justice Court; and it was held that defendant's motion to the County Court to dismiss the appeal for want of jurisdiction was properly overruled, because, as of the time of the motion, "the amendment was clearly inadmissible, and could not have the effect of destroying the plaintiff's right upon his original demand."

The doctrine of this group of cases is considered as controlling in the one under investigation to the extent of establishing that the filing of the amended petition, whether it served merely to increase the damages sought at the time of judgment, or whether it served to add a new cause of action did not have the effect of ousting jurisdiction as to the old suit, which continued to pend until the judgment was rendered.

Pleadings in much more doubtful cases have been held to cause no ouster of jurisdiction. In McDannell etc. v. Cherry, 64 Texas, 177; Miller v. Newbauer, 61 S. W., 974 and Taylor v. Lee, 139 S. W., 908. which were cases involving, as here, unliquidated values, it was held that even an original petition alleging an amount in controversy beyond the jurisdiction of the court did not destroy the power of the court to proceed further, but that, in the absence of a showing of fraud, the petition could be later amended so as to bring the amount within the necessary limit.

Appellee's objection that all jurisdiction was lost is, therefore, considered untenable, and the view of the Court of Civil Appeals upon that branch of the case thought to be undoubtedly correct.

Coming now to the other branch, the question propounded by the Court of Civil Appeals is, whether the County Court had power in this case to render a judgment in appellee's favor against appellants for a sum in excess of $1000.00.

Appellee suggests that this power was present by reason of appellants' replevy bond regardless of whether there was pleading for relief upon it. Since the certificate, by mention of the writ of sequestration and the replevy bond, leaves that question open, and since its decision, if in the affirmative, will answer the question certified, appellee's suggestion has been examined; with the result that it is thought to furnish a proper solution without the necessity of a discussion of the points of law involved in the case cited in the certificate.

It is the opinion of this Court that the County Court, by reason of the sequestration proceeding and, more especially, of the replevy bond given in that proceeding, was authorized either upon the trial already had, or upon another trial, if for any reason the cause should be remanded, to render a judgment exceeding $1000.00 in amount.

At the outset it may be noted that the judgment by virtue of defendant's replevy bond in a sequestration proceeding is not dependent upon any pleading looking to that relief, but is a statutory right arising by reason of the existence of the bond itself and of an adjudication of the main issue in plaintiff's favor; and that this summary judgment may be entered not only against the sureties but also against the principal in the bond. R. S. Art. 7106; Watts v. Overstreet, 78 Texas, 578; Sartain v. Hamilton, 14 Texas, 348.

But that judgment in such a case may exceed the ordinary limit of the jurisdiction of the court, would perhaps justify a more extended opinion.

Sec. 16, Art. V of the Constitution defines the jurisdiction of the County Court. It provides that such court shall have jurisdiction ''in all civil cases when the matter in controversy shall exceed in value two hundred dollars....and not exceed one thousand dollars, exclusive of interest.'' Farther on in the same section, original probate jurisdiction is granted, among other classes, and later still, the power to issue ''all writs necessary to the enforcement of the jurisdiction of said court.''

It would appear to be under this last, and not under the first, provision that the power to issue the writ of sequestration and the power to proceed to judgment by reason of the defendant's replevy bond in that proceeding, lie. This seems apparent not only because sequestration is a writ to enforce jurisdiction, that necessarily carries its incidents with it, but also because of the history of that proceeding in this State and of the proper construction to be given to the Constitution.

That the writ of sequestration and the steps under it are necessary to the enforcement of the jurisdiction of the court issuing it, is quite plain. The statutes authorizing and governing it, empower County and other courts for that express purpose, after the filing of certain suits involving the title or possession of property or liens upon property, and after showing is made by plaintiff that there is reason to believe that leaving the property in the possession of defendant or without attentive possession will result in a loss or impairment of the court's power to give relief upon the basis of it, to issue a writ of sequestration and take the property, which is the subject-matter of the main suit, into the custody of the court in order to preserve it in its original condition until judgment is had, at the trial justly disposing of it. R. S. Arts. 1772, 7094-7102. Thus far the proceeding is summary and defendant has had no hearing; and none is provided for him until the trial. Yet, to dispossess him may actually be the perpetration of a wrong, may unjustly deprive him of the earning power of the property, and may be disastrous to his other property and business interests to an extent entirely out of proportion to the value of the particular property that is seized. To afford defendant a just

measure of due process, the law provides for him a number of recourses, among which is the right temporarily to retain the possession and use of the property by giving a replevy bond with the assistance of sureties. However, lest plaintiff, on the other hand, be unjustly deprived of the possession and earning power of what actually belongs to him and may have been wrongfully or even feloniously taken from him in the first instance, lest the defendant be unjustly enriched and cause depreciation in the value of the property at plaintiff's expense and be unable personally to make the injury good, and lest the court's final power to give relief upon the basis of the property be lost or impaired on account of defendant's possession, use and treatment of it pending replevy, the law in turn gives to plaintiff several features of protection and, among others, the provision that if he shall prove himself to be in the right, he shall be entitled to a judgment not only in the main case but also against the obligors upon the replevy bond, for the value of the property and its earnings that have been enjoyed by defendant during replevy. And, as a final act of justice, the law allows defendant and his sureties credit upon the judgment, which has been given against them, for the value of the property if returned. R. S. Arts. 7103-7107. There is other incidental and equally appropriate procedure which is not necessary to mention. It will be apparent from the summary of the general features of the statutes, that the writ of sequestration would be too drastic to bear, but for its incidents, including the replevy bond procedure; that this procedure is an indispensable feature of it; and that the remedy by writ of sequestration is, as a whole, essentially "necessary to the enforcement of the jurisdiction of the court" and is laudably designed to reach that end by such orderly and effective means, and is such a remedy as should be contemplated by wording like that above quoted from the Constitution.

The history of this phraseology of the Constitution is thought to bear out this view; and in connection with that subject, the provisions of the present Revised Statutes designating the writ of sequestration as one to enforce jurisdiction may be profitably observed:

It is provided there that the judges of the district and county courts, either in term time or in vacation, shall have authority to grant "writs of mandamus, injunction, sequestration, attachment, garnishment, certiorari and supersedeas, and all other writs necessary to the enforcement of the jurisdiction of the court;" that either the judges or the clerks shall, at the commencement or during the progress of "any civil suit" have power to issue writs of sequestration returnable to the court, and that other procedure shall ensue, including that of replevy by defendant and summary judgment against all of the obligors in the replevy bond upon judgment for plaintiff in "the suit." R. S. Arts. 1713, 1772, 7094, 7103-7106.

Note the important distinction between the words "all civil cases" and "writs necessary to the enforcement of the jurisdiction" as found

in the Constitution and the like distinction between "any civil suit" and writs "necessary to the enforcement of the jurisdiction" as found in the sequestration statutes.  。

To resume; it will be found that the present sequestration proceeding in at least some respects, and among them that involving replevy by defendant, was bodily borrowed during the Republic from the practice code of Louisiana. McClenny v. Floyd, 3 Texas, 116. An imperfection in this procedure, as may be deduced from that case, was, that the replevy bond was not required to cover the earning power of the property pending the main suit. The Constitution of 1845 having afterward defined the power. of the District Courts to include "all writs necessary to enforce their own jurisdiction," the Legislature, in declaring the details of that jurisdiction, provided among other things, for the procedure of sequestration, remedying, in the act, the defect above mentioned and embracing in all substantial respects the procedure obtaining at present and involved in the present case, as well as the designation of the writ as one necessary to enforce jurisdiction. Hart. Dig. Arts. 643, 2864-2873.

That these and other articles from Hartley's Digest pertaining to various writs, were enacted upon the authority of the section of the Constitution giving to District Judges and Courts the power to issue "all writs necessary to enforce their own jurisdiction" etc. and that by such authority "it was left to the Legislature to prescribe regulations for the exercise of the power conferred" and "the limitations and restrictions which should govern its exercise," which duty it performed by passing those laws,—was held, ten years after the convention, in Kitchen v. Crawford, 13 Texas, 516.

It is thus seen that the legislation governing the present sequestration procedure, including that upon defendant's replevy bond, was, by both the Legislature and the Supreme Court, attributed to the constitutional phrase under investigation shortly following the first Constitution. Thereafter the same phrase occurred and re-occurred in the several succeeding Constitutions relative to the District Courts, and, when the County Courts were created, relative to them, with meanwhile, and contemporaneously, a frequent repetition of these same laws on the part of the Legislature designating the writ as one necessary to enforce jurisdiction, defining the scope of the power with regard to sequestration and its incidents, including the replevy bond procedure, and, moreover, applying the same provisions to the County Courts after they were organized, Const. 1861 Art. IV, Sec. 10; Pasch. Anno. Dig. Arts. 5095, 5099; Const. 1866, Art. IV, Sec. 6; Paschal's Laws of Texas, Arts. 7431, 7432; Const. 1869, Art. V, Sec. 7; Const. 1876, Art. V, Secs. 8 and 16; R. S. 1879 Arts. 1123, 1170, 4489, 4498-4501; Amend. Const. Art. V, Sec. 16, Sept. 22, 1891; R. S. 1895 Arts. 1107, 1163, 4844, 4864, 4873-4876; R. S. 1911 Arts. 1713, 1772, 7094, 7103-7106.

It may, therefore, be safely concluded that the whole sequestration proceeding, not only because of its essential nature but also because of this interpretation on the part of the Supreme Court, the Legislature and the various Constitutions, lies, not by reason of the passage in Sec. V, Art. 16, regulating jurisdiction over "civil cases' according to the value of the matter in controversy, but by reason of this latter passage empowering the County Court to issue "all writs necessary to the enforcement of the jurisdiction of said court."

That the jurisdictions are separate, from the standpoint of values, and that the first phrase does not confine or restrict the latter, providing there be jurisdiction of the property which is the subject-matter of the main suit, seems apparent for a number of additional reasons:

Ordinarily the very conferring of jurisdiction upon a court, with nothing further said, empowers it inherently to use statutory and recognized means of enforcing its jurisdiction without regard to the value, the amounts or the subject-matter involved in the process. Lockridge v. Baldwin, 20 Texas, 303; State ex rel Ellis etc. v. The Board etc., 70 Ohio St., 341; State v. Assurance Co., 251 Mo., 278, 46 L. R. A. (N. S.), 955; Taylor v. Hulett, 15 Idaho, 265, 19 L. R. A. (N. S.) 539.

It is characteristic of inherent, auxiliary and exceptional jurisdiction that it is not confined by the provisions that limit the scope of ordinary jurisdiction. In McDowell v. Morgan, 33 Mo., 557 it was held that jurisdiction over a forthcoming bond in attachment, exceeding in amount the limit of the ordinary jurisdiction of the Justice Court, was not controlled by the general law defining jurisdiction. In Allardyce v. Hambelton, 96 Texas, 30, notwithstanding a probate proceeding involved the title to real estate of the value of some $10,000.00, it was held that the County Court had jurisdiction of it. In Lockridge v. Baldwin, 20 Texas, 305, the District Court was held to have power to impose a penalty of $47.00 against a defaulting purchaser at execution sale. In Texas Land etc. Co. v. Sanders, 101 Texas, 616, where the County Court had erroneously caused personalty of the value of $1218.75 to be delivered, pending suit, to a party, by whom it was afterward converted, it was held that the same court had the power to render judgment in that amount against that party in favor of other parties who were the true owners. And in Heidenheimer v. Johnson & Co., 76 Texas, 200, where property was attached out of the District Court and sold pending suit, it was held that intervening lien creditors having claims of less than $500.00 each against the fund, were within the jurisdiction of the court.

There are, furthermore, evidences within the Constitution itself that the writs mentioned, including that of sequestration, may not be restricted, as to scope, by the provisions regulating ordinary jurisdiction.

It cannot reasonably be expected that a provision in a Constitution having the object of enforcing jurisdiction should be intended to have

so narrow a scope as that of the ordinary jurisdiction that it is designed to assist.

To enforce this jurisdiction the means must necessarily equal and overcome the obstacles in the way. The executive department of the government is created with that end as one of its main purposes; the only limit to the force it may use in effecting it, is the full extent of the power and resources of the State at its command. And when the same instrument confers upon the courts the authority by writs to aid in effecting the same end, it would seem to be contrary to its spirit to construe that function as being confined within the narrow limits of ordinary jurisdiction.

But the language of the Constitution evidences that it is not so confined. A reading of the section under consideration will reveal that not all of the proceedings over which it confers power are "civil cases" such as the instrument declares are limited as to amounts, and that not all of them are intended to be or are susceptible of being controlled by amounts. Probate matters are among the proceedings mentioned in the section. While some of them, especially in cases of contest, may be regarded as species of "civil cases," it is quite evident that the values or amounts of the estates, the shares, the claims for money and the accounts involved in them have no bearing upon the jurisdiction of the Court over them. From this it follows that "civil cases," as used in Section 16, does not bear its broadest meaning. Considering the very matter of "writs necessary to the enforcement of the jurisdiction of said court;" as has been shown, they are, the auxiliary phases of mandamus, injunction and certiorari and writs of sequestration, attachment, garnishment, supersedeas and "all other writs necessary to enforce the jurisdiction of the court." While some of these, as attachment and garnishment, may be regarded as "civil cases" in the broader sense of that designation and may assume substantially all of the attributes of that class of proceedings whenever there are interventions in them by rival creditors, or statutory contests, most of them are never commonly thought of or legally designated under that classification; and while most of them in one way or another may directly or indirectly involve property or values, some of them, as the auxiliary writ of certiorari and other incidental writs that serve to control official acts and duties, have no relationship to anything that can be measured in terms of money.

There is no suggestion in the words of the Constitution that a different rule, as regards jurisdiction, is intended to apply to some of these writs from that applying to others. On the contrary, they all come within the same general grant of power to issue "writs necessary to the enforcement of the jurisdiction of said court" and in questions of jurisdiction should be regarded as of the same class and, moreover, as of a different class from those proceedings described in

the first part of the section as "civil cases," as to which the value of the matters in controversy are controlling on such questions.

Upon the same subject, it may be observed that the procedure and scope of a number of these writs, cannot be practically held within the ordinary jurisdiction obtaining in civil cases in the County Court. This will be readily apprehended by considering that bonds and judgments by virtue of bonds, based upon values subject to being in some cases above $1000.00 and in other below $200.00 are provided for in attachment, garnishment and sequestration in case of replevy by defendant, and in sequestration in case of replevy by plaintiff and of the sale of perishable property to third persons on credit; and that in the instance of attachment and sequestration there are provisions for reducing perishable property, under levy, whatever its value may be, to cash, which must be disposed of, whatever the amount of the price received, under order of the Court. R. S. Arts. 258, 269, 179, 7106 and amendment, 7110, 7111 and amendment, 7116-7118, 259-262, 7113-7115.

But these observations are not confined to the proceedings on bonds, they extend to the very subject-matter of these writs and the judgments pursuant to them.

In attachment, if the value of the property levied upon, and thus subjected to lien by reason of the levy of the writ, were in any way determinative of jurisdiction, the retention or dismissal of proceedings of that sort in the County Court would depend not upon the judgment of the court but upon that of the officer making the levy. It is very clear, however, that the values involved in the levy are not determinative; but that jurisdiction is determined alone by the amount of the debt for which suit is filed, regardless of the fact that the value of the property that is subject to the lien, exceeds the limit of the ordinary jurisdiction of the Court. Barnett v. Rayburn, 16 S. W., 537 (Ct. App.); Landa v. Mercantile Banking Company, 10 Texas Civ. App., 582; 31 S. W., 57; Lewis v. Denison, 247 S. W., 914. A like rule should be held to apply in the case of sequestration whatever the particulars and pecularities of its incidents.

As stated, another of the writs, coming within the phrase of the Constitution under consideration, is, auxiliary injunction. That the amount or value involved by its execution is not controlled by the ordinary considerations of the amount or value of "the matter in controversy" in the main suit, is decided in Moody v. McRimmon. 7 Texas Civ. App., 382, 27 S. W., 780 and McRimmon v. Moody, 87 Texas, 260.

The controversy in those cases was between two creditors who had attached personalty under the value of $200.00, one by virtue of a debt of $109.00 in the Justice Court and the other by virtue of a debt of $400.00 in the County Court. The holders of the larger debt intervened in the Justice-Court suit to obtain priority, but dismissed

intervention there and sought injunction in the District Court against order of sale from the Justice Court.

The Court of Civil Appeals, however, decided that the intervenors had selected the wrong forum and, among other things, that, under the very phrase of the Constitution that is being considered in the present case, they should have used the auxiliary writ of injunction out of the County Court while their suit was pending there, "to enforce its jurisdiction."

Writ of error was applied for before the Supreme Court. It was dismissed on the ground that the relief was one that under that phrase of the Constitution could have been had in the County Court and was, for that reason, outside the appellate jurisdiction of the Supreme Court. Chief Justice Gaines wrote the opinion. After quoting this phrase, authorizing writs to enforce jurisdiction, he continued:

"If the applicants for the writ of error had a suit pending in the County Court in which a valid attachment had been levied upon personal property belonging to the defendants in that suit, and if the defendants in the present action were about to cause a sale to be made of the property under a void attachment, we are of the opinion that under the provision quoted the County Court had the power, upon a proper petition, to restrain the unlawful interference in order to protect its own jurisdiction."

Thus, it was held that the County Court in aid of the enforcement of its own jurisdiction could have enjoined the execution of a Justice Court judgment involving less than $200.00 in value.

As stated, another of the writs coming within the phrase of the Constitution under consideration, is garnishment. That the amount or value involved by its execution is, in like manner, no part of the matter in controversy, is decided in King & King v. Porter (Sup.) 252 S. W., 1022, with which decision the present opinion properly reaches its conclusion. The case was one of garnishment after judgment, thus presenting the semblance of a new and independent suit. The judgment in the former, or main, case had been for $100.00 and, hence, the Court of Civil Appeals would clearly have had appellate jurisdiction of it. The apparently separate garnishment suit resulted in the impounding of $51.51, over the ownership of which there was statutory contest, intervention and litigation, bearing all of the marks of an ordinary trial. It was contended that the amount of the judgment in the garnishment suit, being for $51.51, was not within the appellate jurisdiction of the Court of Civil Appeals. The Court of Civil Appeals so decided. The Supreme Court, however, decided, on certificate, to the contrary, upon the ground that the amount involved in the main suit should be looked to on the question of jurisdiction and not the amount involved in the auxiliary procedure. Rele-

vant portions of the opinion and of a quotation in it from Kelly v. Gibbs, 84 Texas, 148, may be profitably given:

"The court in which the original suit was filed had already acquired jurisdiction of the original parties and of the subject-matter of that suit (upon which the garnishment depends), and of all processes for enforcing its judgment thereon. The garnishment proceeding is ancillary to and a part of the original suit, and the court in that suit having acquired jurisdiction of the subject-matter for all purposes, including the enforcement of its judgment, it necessarily follows that its jurisdiction extends to all issues raised in the enforcement of that judgment, and that its jurisdiction controls the appellate jurisdiction of such issues on appeal.

"The jurisdiction of the Court of Civil Appeals in this case is based upon the fact that the garnishment proceeding is only an incident to the original suit. It is a part of the original suit, and jurisdiction, both of the trial court and of the appellate court, is based upon the original suit as contemplated by the statutes. . . . .

" 'We are of the opinion that upon no other theory can the jurisdiction of the court in many cases be maintained. Let us take a case in which a garnishment has been sued out upon a judgment rendered in the District Court, and in which the amount in controversy in the garishment proceeding is less than $500. Unless the garnishment is merely ancillary to and a part of the principal case, the court would be without jurisdiction to try the issue. But if it be deemed ancillary, the objection that the court is without jurisdiction is obviated. The District Court having power to execute its judgments, and the garnishment being but a mode of enforcing execution, it is auxiliary to the original action and a part of it, and as such the District Court has power to determine the issues which arise out of it.' "

The necessary result of these cases involving the jurisdiction of the auxiliary writs of attachment, injunction and garnishment and over the issues in and incident to them, and attributing it to that part of Section 16, Art. V of the Constitution authorizing writs necessary to the enforcement of jurisdiction, is, that proceedings coming under that authority, as recognized by Justice Pierson in the King case, are apart, as to jurisdictional limits, from the main proceedings designated in a former portion of the same section as "civil cases" and are not within the purview of the ordinary limitations as to amounts.

Upon that and the former conclusion reached, it is the opinion of this court: that the filing of the amended petition in the present case did not divest the County Court of jurisdiction over the original cause of action; that, because of the replevy bond given in the sequestration proceeding, it was the statutory authority and duty of the Court, upon rendering judgment in the main case in favor of plaintiff for the recovery of the dragline bucket, also, and apart from any pleading for such relief, to render summary judgment against de-

fendants and the other obligors upon the bond for the value of the bucket and its rent or revenue during the time ensuing after the execution and approval of the bond; and that, therefore the certified question should be answer in the affirmative.

Opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

<div align="right">

C. M. CURETON,

Chief Justice.