GREENWADE et al. v. BRADLEY.
(No. 1759.)

(Court of Civil Appeals of Texas. El Paso. May 28, 1925. Rehearing Denied June 18, 1925.)

1. **Alteration of instruments** ⬅️11(2)—**Raising of replevy bond at instance of constable after his approval held spoliation.**

Raising of replevy bond by stranger to instrument at request of constable, after having been signed by sureties and approved by constable, *held* a spoliation and not alteration.

2. **Alteration of instruments** ⬅️13—**Rule that plaintiff, suing on altered instrument, presumed to have ratified in its altered form, held not applicable.**

Rule that, where party sues on bond in its altered form, plaintiff will be presumed to have ratified alteration, *held* not applicable in action against sureties on replevy bond, where court in its judgment considered bond as in its original amount.

Appeal from District Court, Haskell County; Bruce W. Bryant, Judge.

Action by W. T. Bradley against R. A. Greenwade and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Dennis P. Ratliff and Ratliff & Ratliff, all of Haskell, for appellants.

Jas. P. Kinnard, of Haskell, and Mack & Mack, of Fort Worth, for appellee.

WALTHALL, J. W. T. Bradley brought this suit against W. H. Stoker, to recover on a promissory note in the principal sum of $661.89, of date April 23, 1923, bearing interest at the rate of 10 per cent. from date until paid, payable to W. T. Bradley on September 1, 1923, and providing for attorney fees in the event of suit. The note not having been paid, suit was filed thereon on September 3, 1923. When suit was filed, Bradley caused an attachment to issue and be placed in the hands of G. W. Turner, constable, who, thereupon levied upon and took into his possession a stock of goods, wares, and merchandise as the property of Stoker.

It is alleged that Stoker, as principal, and R. A. Greenwade, A. D. Lewis, and Sam T. Chapman, as sureties, executed and delivered to said constable their replevy bond in the sum of $1,250, stating the conditions of said bond in the terms of the statute, and that same was duly accepted and approved by the constable, and that the goods, wares, and merchandise levied upon under the attachment were redelivered to Stoker.

Bradley prayed for judgment for his debt with foreclosure of his attachment lien, and for judgment upon said replevy bond against Stoker and said sureties, on said replevy bond, for the amount of his debt, interest, and attorney fee, cost, and general and special relief.

So far as the issues presented here are involved, Stoker answered by general denial, and by special answer alleged that, since the filing of this suit he filed a petition in bankruptcy stating his insolvency, that he was duly adjudged a bankrupt; that a trustee in bankruptcy was duly appointed, and was in charge of his estate, and was proceeding to administer thereon, and that the note sued on is a debt from which a discharge in bankruptcy would be a release, and that, within the time required, he would make application for a discharge. Stoker and the sureties, Greenwade, Lewis, and Chapman, further answered that the amount of the bond when they signed it was in the sum of $850, and that thereafter, without their knowledge or consent, the amount of the bond was raised to the sum of $1,250, by the officer taking said bond or by some one acting for him, and alleged, for that reason, the bond had been materially altered, and was not the bond signed or executed by them, nor by any person authorized by them, and denied that they had since ratified or confirmed same, and for reason of the alleged material alteration in the bond after its execution they asked that the bond be held void.

The case was tried without a jury, and the judge filed findings of fact. The controverted facts found, on which the court based the judgment, are substantially as follows: After stating the date of the filing of the suit, the issuance of the attachment, the levy upon the property by the officer; the amount of the note sued on, the replevy of the property and its redelivery to defendant Stoker on his replevy bond with Greenwade, Lewis, and Chapman, as sureties, all uncontroverted facts, the court found:

"(4) That after its execution the said replevy bond was accepted and approved by said officer (G. W. Turner, constable) who made the levy of attachment on the 7th day of September, 1923, after which he showed it to plaintiff, who told him that he (plaintiff) did not think it was for a sufficient amount, but that this was a matter for the officer to determine.

"(5) That said constable took the bond to defendant with the remark that it ought to be for $1,250, and that one Ben Charley Chapman, minor son of one of the sureties, changed the amount of said bond from $850 to $1,250, without the knowledge or consent of any of the sureties, and that it was then handed back to said officer, who made his return thereon and returned it into court.

---

"(6) That the alteration in the amount of said bond was made by a stranger to the instrument, without the privity of plaintiff, the obligee named therein, and that said alteration was merely a spoliation of said replevy bond by a stranger to the instrument after its approval by the officer."

The court rendered judgment in favor of plaintiff, Bradley, for the amount of $781.40, the amount of the principal of the note, interest, and attorney fee, and, after reciting in the judgment substantially the facts as to the replevy bond as above set out, the court further entered judgment in favor of plaintiff against Stoker, as principal, and against the sureties, Greenwade, Lewis, and Chapman, sureties in the replevy bond for the said amount of the note, interest, and attorney fee, and all costs, limiting the amount of recovery against the sureties, in any event not to exceed $850, the amount named in the replevy bond, "as it read before said spoliation, and interest thereon at the rate of 10 per cent. (6 per cent. noted in brackets) from the day of said bond, September 7, 1923." The judgment was entered on the 24th day of May, 1924. The judgment further recites that the judgment is, formally rendered against Stoker for the purpose of establishing the amount of his debt on the note, and holding the sureties on the replevy bond, and directs a perpetual stay of execution as to Stoker alone, and awards the issue of execution as to the sureties. The sureties excepted, gave notice of appeal, filed assignments of error, and duly perfected this appeal.

## Opinion.

The propositions of appellants relate to the effect of the change made in the amount of the replevy bond on the liability of appellants, sureties, by changing the amount of the bond as it read after the sureties had signed the bond, and it had been approved by the constable, from $850 to $1,250. Under several propositions appellants insist, in effect, that the court is in error, under the evidence, in the above-recited findings, in holding that the alteration made in the amount of the bond was merely a spoliation of the bond by a stranger to the instrument, while in fact it was an alteration made under the authority and consent of the obligee in the bond, and with the knowledge, consent, and at the instance of the officer in charge of the matter of taking the bond, and done after the bond had been signed and delivered by the sureties to the officer for his acceptance and approval, and after the officer had in fact accepted and approved the bond, and, as found by the court, the alteration was made without the knowledge or consent of the sureties.

We need not review the court's finding that the alteration as to the amount was made without the knowledge or consent of the sureties, as that finding is not challenged here. G. W. Turner, the officer who levied the attachment and took the replevy bond, testified substantially as follows:

He and Mr. Bradley were taking an inventory of the stock of goods when "some of them —Mr. Stoker, maybe" called him across the street, "and they had this bond already fixed out—the amount wasn't on it. They first put the amount of the bond $850. * * * Mr. Greenwade done the writing, put the first amount in the bond as well as I recollect. I am sure he did, and after they signed it [Stoker, Greenwade, and Chapman] I went back to the store, and then I came back to them. I decided the bond wasn't like it ought to be, and decided before I turned the goods over that I would call up some authority here and find out. I did that. When I came out of the phone office, Ben Charley Chapman, was coming in the door and Mr. Stoker was there close, and I told them the bond had to be higher, I said about double the amount; I told them it would have to be $1,250. I said I wouldn't take the bond that way. * * * I would not accept the bond, and they afterwards got Mr. Lewis on the bond. If I remember right, Ben Charley Chapman changed the amount of the bond. * * * He [Lewis] turned the bond over to me. I had done approved the bond. As to whether I had really approved the bond until Mr. Lewis signed it, I had done signed it. * * * I went to where Mr. Bradley was. I don't know that I showed him the bond. He asked me who the signers were. I told him who they were. I told him Mr. Greenwade, Mr. Chapman, and Mr. Stoker. After I had talked with him I come right back to the telephone office and phoned Mr. Allen because I didn't know the law. After I phoned to Mr. Allen I went back up there, and that is when I took the bond up there in front of the picture show. * * * I did not consult Mr. Bradley as to what to do. I just walked back up there, was going to turn the goods and keys over to the parties and Mr. Bradley didn't seem to like it, and I wanted to be satisfied about it, and wanted everybody else satisfied, and I called for some authority. I don't know who drew the bond. They had a bond when they called me over there, but the amount wasn't on it. * * * They first said $850; that was the first agreement. It shows to have been put down there. I filled it out at that time after we come to the agreement that $850 would be sufficient; these parties signed it, these two men, Mr. Greenwade and Mr. Chapman and Mr. Stoker signed it, and I signed it. It was approved when I signed it. Then I went back up there where Mr. Bradley was. I didn't go, there to consult anybody, I had to go up there to tell him. At first I approved an $850 bond; I then went up to the store. There wasn't very much said between Mr. Bradley and I. * * * Mr. Bradley said he wouldn't accept the bond, but he said that was up to me. He did not send me to phone Crawford Allen. After I talked to Crawford I went back and demanded a $1,250 bond. * * * I went right back there, and it was changed; they didn't sign it no more, just agreed to raise it. I told them it had to be raised. * * * As to whether I approved the bond any more after they agreed to make the change, my name was already on the bond.

I had told them I. wouldn't take it that way. I never turned the keys over until after I got this bond raised and Mr. Lewis' name on it."

W. T. Bradley, appellee, testified:

"I saw this bond at that time in his [Turner's] hand, and he read it to me. The first time the bond was for $850. Mr. Greenwade and Mr. Chapman and Mr. Stoker had signed it; Mr. Lewis' name was not on it at that time. Mr. Turner went from me to the telephone office. This is the bond that was turned over to me. This is for $1,250. That is the only bond we would accept; all these names were on it. I felt like I had something to do with accepting it."

Ben Charley Chapman testified:

"I changed this bond; I raised it from $850 to $1,250, as well as I remember; I raised it at the request of Mr. Turner. It was supposed to have been approved at that time. * * * Mr. Turner rubbed it out, and he says. 'You change this, I can't write with pen and ink,' and I says, 'All right, if it is all right.' "

There is other evidence practically the same as the above, but none, we think, contradictory of what is stated, except as to who was present at the several times mentioned.

The proposition presented for consideration, concretely stated, is whether the change made in the amount of the bond was merely a spoliation of the bond by a stranger to it, as found by the court, or was the change such alteration as renders it void as to the sureties.

The answer of the sureties alleges that the bond "was raised to the sum of $1,250 by the officer taking said bond, or by some one acting for him." The uncontroverted evidence shows that the change in the amount of the bond was made by a stranger to it, as found by the court, and, if the evidence showed no more, the change would be but a spoliation of the bond by a stranger to it, but the evidence is equally conclusive that the constable, after accepting the bond as first presented, had repeatedly declared that he would not take the bond as it then was, that it must be raised to $1,250, and that at his request Ben Charley Chapman made the physical change as requested. The bond as changed was then returned by the officer.

[1] If the officer taking the bond was himself a stranger to it, the change in the amount would be a spoliation and not an alteration of the instrument. We have concluded that the constable was likewise a stranger to the bond; that the change made by the constable, or by another under the direction of the constable, such other person being a stranger to the bond, and such change made after the bond had been presented to the constable for his acceptance and approval, and the constable having accepted and approved the bond, before any change in the amount of the bond had been made, such change was a spoliation and not an alteration of the bond. The constable was merely the agent of the law to take the bond of Stoker payable to Bradley, pass on the sufficiency of the bond as to the amount and solvency of it, and return it into court. In all other respects and for all other purposes the constable was a stranger to the bond. When he accepted and approved it, the contract was complete, and his duties, except its return, were then at an end. Medlin v. Platte County, 8 Mo. 235, 40 Am. Dec. 135; State v. Berg, 50 Ind. 496; State v. McGonigle et al., 101 Mo. 353, 13 S. W. 758, 761, 8 L. R. A. 735, 20 Am. St. Rep. 609; Anderson et al. v. Bellenger, 87 Ala. 334, 6 So. 82, 4 L. R. A. 680, 13 Am. St. Rep. 46; 1 R. C. L. p. 985, and notes.

As said by Judge McClellan, speaking for the Supreme Court of Alabama in Anderson v. Bellenger, supra, when the sheriff accepted and approved the bond with the names on it, the contract was complete, and his duties, so far as the execution of the instrument was concerned, were then at an end. His further duty with respect to it was to file it in the office of the clerk of the court. After taking the bond, the sheriff had only the naked custody for a particular purpose. In all other respects and for all other purposes the sheriff was a stranger to the bond.

In some of the propositions the suggestion is made that the change in the bond was made with the consent and authority of Bradley, and by Stoker, but such is not made a ground in the answer, nor does the evidence sustain either contention.

[2] Appellants urge error in rendering judgment for the reason that appellee alleged the execution and delivery of the bond in the sum of $1,250, and prayed judgment against appellants on the bond as raised, and it is insisted that by so pleading appellee ratified and adopted the bond as altered, and cannot avoid the effect of such change.

The court, in the trial and in the judgment, viewed the bond as of the amount of $850, as it was when executed and delivered, and before its spoliation. The bond in either amount is the same instrument. The court having decided the issue tendered as to the validity of the bond, and having determined that the bond for $850 was the amount upon which the sureties had agreed to be bound, the question whether judgment should be rendered on the bond in that amount rather than on the bond, by reason of its spoliation, improperly reciting a different amount, was one which addressed itself exclusively to the court. Gonzales v. Flores (Tex. Civ. App.) 200 S. W. 851.

The judgment, where there has been a replevy of the property, is the statutory right arising by reason of the existence of the bond itself and of the adjudication of the main issue in plaintiff's favor. Article 269,

R. S. Where judgment is against the principal in a replevin bond, it is the duty of the court to render judgment on the bond. No pleading on the bond is necessary. Tyson v. Bank (Tex. Civ. App.) 154 S. W. 1055; Isbell v. Kenyon-Warner Dredging Co., 113 Tex. 528, 261 S. W. 762.

Such, however, would not seem to be the rule in suits where the basis of the plaintiff's cause of action is the contract upon which he sues. Bowser et al. v. Cole, 74 Tex. 222, 11 S. W. 1131; Metropolitan Nat. Bank v. Vanderpool (Tex. Civ. App.) 192 S. W. 589.

Here it was held on an issue tendered, and we think properly so, that an alteration of the bond did not occur. We think the rule invoked by appellants that, where a party sues on an instrument that has been altered, and the suit is on the instrument in its altered form, the plaintiff in such suit will be taken to have ratified or adopted the alteration, has no application to the facts here.

We have carefully considered all of the propositions presented, and have concluded they present no reversible error.

The case is affirmed.