## GROUP HOSPITAL SERVICE, Inc. v. BASS.

### No. 4824.

Court of Civil Appeals of Texas. Beaumont.
Sept. 11, 1952.

Rehearing Denied Oct. 15, 1952.

Further Rehearing Denied Nov. 12, 1952.

Overton & Ballowe, Austin, for appellant.

Homer E. Stephenson, Orange, for appellee.

WALKER, Associate Justice.

This action was brought on a contract of insurance to recover the cost of care and services rendered the insured by a hospital in' which an operation was performed on the feet of the insured and also to recover the cost of the services rendered by the attending physician. The appellant Group Hospital Service, Inc., also the defendant, was the insurer. The wife of E. J. Bass was the person insured, and Mr. Bass is the plaintiff. The cause was tried to the court without a jury, and the trial court rendered judgment in plaintiff's behalf only for the cost of the hospital care and services; this amounted to $146.25. From this judgment the defendant has appealed. No findings of fact have been filed and we must, therefore, assume that all issues of fact were resolved in favor of the plaintiff.

The defendant is a nonprofit corporation, organized and operating under Acts 1939, 46 Leg., p. 123, formerly Chapter 14, Title 71, V.A.T.S. and now Chapter 20 of the Insurance Code, V.A.T.S. Insurance Code, § 20.01 et seq.

The contract of insurance between defendant and Mrs. Bass is expressed in a certificate, dated June 15, 1950, issued to Mrs. Bass by defendant. On June 11, 1951, about a year afterward, Mrs. Bass entered the hospital for the purpose of having an operation performed to correct bunions. This was the operation which we have mentioned, and the hospital care and services which constitute the basis of the claim against defendant were rendered as incidents of, and consequences of this operation. Mrs. Bass had a bunion on each foot, and an operation was performed on each bunion. Mrs. Bass had these bunions when she made the contract of insurance with defendant, and the defendant argues that the treatment given her in the hospital was excluded from the contract by the following provisions of the certificate: "VI. Services not included, The benefits of the plan are not available for: F. Treatment for physical conditions existing at the time the patient became a subscriber to the plan. * * * I. Care received for any condition while plaintiff is confined to hospital for a condition for which the benefits of the plan are not available—."

Although the bunions were in existence when the certificate was issued to Mrs. Bass (and had been in existence and in the process of formation for several years prior to 'that date) these bunions did not then interfere with Mrs. Bass' activities and did not require treatment of the sort given Mrs. Bass in the hospital. Indeed, there is no evidence that any other treatment had ever been given the bunions. Mrs. Bass was a practical nurse, and she testified that the bunions "wasn't bothering me to amount to anything. I was able to do my nursing and house work."

However, after the policy was issued and while it was in force, Mrs. Bass struck the left bunion against a door, and the condition of this bunion became worse and eventually required the treatment which was given it in the hospital. The evidence raises the issue, which the trial court has resolved in plaintiff's favor, that the blow caused this condition, and that this condition was not the result of a natural development of the bunion, unaffected by the blow.

The bunion on the right foot did not require the treatment given it in the hospital, but the attending physician concluded that it probably would do so eventually, and he recommended that the operation be performed on both feet to avoid a second operation in the future; and this was the reason why the bunion on the right foot was given the treatment it received. The

following testimony of the physician expresses these conclusions: "The left foot was a therapeutic operation or treatment for an existing condition, and the right foot was prophylactic. This is an exceedingly painful operation. I think some of these people suffer from these operations more than from large bone operations I perform, so I did not feel right putting her through the operation to treat the condition then existing and then waiting a year or two until she had trouble with the right one and bring her back to it. I just did them both at one time to prevent further expense, hospitalization."

We hold that the treatment given Mrs. Bass' left foot was covered by the contract of insurance and that it was not excluded from the contract by the provision quoted above. That provision excluded liability for treatment for "physical conditions existing" when the contract was made; and the condition of the left foot which was treated did not exist then and was not a consequence of a condition which did exist then. It was the product of a blow which happened afterward. Perhaps the bunion was more susceptible to injury by such a blow than another part of the foot was, but that fact alone was not a defense to the claim for the hospital treatment given Mrs. Bass' left foot.

However, so far as we can perceive from the record before us, the condition of the bunion on the right foot at the time of the operation did exist when the certificate was issued to Mrs. Bass; and the cost of the hospital treatment given the right foot was not covered by the contract of insurance.

These conclusions suggest the question, whether the sum charged for the hospital care and services rendered Mrs. Bass would have been less if only the left foot had been operated on. It is not entirely clear to us that defendant intends to raise this issue; but there is some evidence, though not much, that the cost of Mrs. Bass' hospital treatment would have been the same if the operation had been performed on only the left foot. Thus, the parties made the following stipulation: "It is stipulated that in the event the defend-

ant is liable at all that the bill for $146.25 rendered by St. Mary's hospital for hospitalization services would be reasonable and proper and would be within the schedule of obligations of the hospitalization certificates issued by the defendant." The trial court could construe this under the facts as meaning that the total charge would be proper if defendant was liable for the operation on only one foot. The attending physician testified: "Q. As a matter of fact, the cost of the hospital care she had would have been the same or approximately the same if you had operated only on one foot instead of the two, and your fee would have been the same, or approximately the same? A. Slightly lower." The question asked by counsel included several questions, and the physician's answer may have been made in response to the last of the questions included, that concerning this fee. Such an answer would imply an assent to counsel's statement that the cost of the hospital care would have been the same, or approximately the same, if the operation had been performed on only one foot, and this implication would afford some support for the trial court's judgment. We accordingly give the testimony this construction because we must interpret the testimony so as to support the judgment of the trial court.

Points 1 to 4, inclusive, are overruled on the basis of the conclusions which we have expressed.

Defendant filed a plea of privilege, praying transfer to Dallas County, the county of its domicile. Plaintiff controverted this plea and alleged that the trial court had venue of the suit under Section 28 of Art. 1995, V.A.T.S. The plea and the merits of the cause were tried together, and the plea was overruled. Point 5 assigns error to the order overruling the plea. The only argument made by defendant under Point 5 is founded upon the following provisions of Art. 20.09 of the Insurance Code, "* * * such corporations shall be governed by this chapter and shall not be construed as being engaged in the business of insurance under the laws of this State." Defendant says that if defendant

is not engaged in the business of insurance, then section 28 of Art. 1995, which prescribes the venue of suits on insurance policies issued by certain types of insurance companies, can not apply to it. We overrule the argument because Section 28 of Art. 1995 does not regulate the business of insurance; it determines only the particular counties of this state in which certain types of actions can be maintained. The quoted provision of Art. 20.09 was intended to exclude the defendant from the operation of statutes regulating the conduct of the business of insurance. For a somewhat analogous situation see W. R. McCullough Life Insurance Co. v. Armstrong, Tex.Civ.App., 158 S.W.2d 585.

We have also considered the question, whether the defendant was such a company as is named in Section 28 of Art. 1995, for this is one of the venue facts under Section 28, McDonald's Tex.Civ. Pract., Section 4.33. The certificate issued to Mrs. Bass provides: "III. Hospital Care in Member Hospitals. A. When referred by a physician and admitted to a Member Hospital as a bed patient any member—included under this agreement and while in full force and effect shall be entitled to the following care and services, when consistent with the condition for which the patient is being treated in the hospital. Such benefits shall be provided only when supplied by hospital, at request of attending physician, and used by patient while confined to the hospital." Following this provision is a list of various services rendered patients by a hospital for which payment will be made under the certificate. The certificate provides further: "IV. Emergency Room Service, In accident cases, not requiring bed care, the member— may receive all hospital emergency room services required in any hospital within 24 hours after the accident, including X-Ray." These provisions insured Mrs. Bass against certain losses from disability by reason of ill health or accident, and the certificate thus provided Mrs. Bass with a limited form of health and accident insurance. The defendant was a corporation under Art. 20.01 (formerly Art. 4590a, Sec. 1, V. A.T.S.). We mention this fact because of

the limited holdings made in Union Trust Estate v. Orr, Tex.Civ.App., 3 S.W.2d 472 and Amarillo Mut. Benev. Ass'n v. Hurd, Tex.Civ.App., 21 S.W.2d 562, which are based upon a statutory definition of a life insurance company now contained in Art. 3.01 of the Insurance Code. We conclude that defendant is to be regarded as a health and accident insurance company within the meaning of those terms as used in Section 28 of Art. 1995.

Point 6 is based upon a misconstruction of the trial court's judgment. The plaintiff did not recover the charge made by the attending physician; the only item of recovery was Mrs. Bass's hospital bill. However, the special exception was properly overruled because the facts on which it is based are not alleged in the petition.

These comments adjudicate all Points of Error assigned. The judgment of the trial court is affirmed.

## On Rehearing

Defendant's motion for rehearing has been considered and is overruled. We add these comments:

(1) Regarding Ground 4: The petition does not show what statute the defendant was incorporated under. One would infer from reading the petition that the defendant had authority to contract to pay the surgical benefits.

(2) Ground 5 assigns as fundamental error that the trial court did not have jurisdiction. The cause was tried in the County Court of Orange County. The petition alleged a cause of action against the defendant on two contracts of insurance obligating the defendant to pay hospital expenses and surgical expenses, and plaintiff prayed therein for recovery of the total amount of these claims, namely, $311.-25, the surgical expenses alleged being $165 and the hospital expenses, $146.25. The petition alleged that defendant made these contracts and that the several items of expense were incurred as a result of the operation on Mrs. Bass' feet. On the trial, it developed that defendant had made the contract to pay the hospital expense but that another corporation had made the contract to pay the surgical costs, and the

plaintiff abandoned the claim against defendant for surgical costs. No order of dismissal was requested or entered; plaintiff's counsel declared that he did not insist on a previous request to add as a party defendant the corporation which had made the contract to pay the surgical costs and stated that he would take judgment for the amount of the hospital expenses. This was $146.25.

The petition fixed jurisdiction in the trial court, the amount in controversy being within the jurisdiction of that court; and the plaintiff's failure of proof (the situation amounts to that) concerning the claim against defendant for surgical costs would not oust jurisdiction. No fraud on the jurisdiction of the court is claimed. See: Nashville C. & S. T. L. Ry. Co. v. Grayson County National Bank, 100 Tex. 17, 93 S. W. 431; Isbell v. Kenyon-Warner Dredging Co., 113 Tex. 528, 261 S.W. 762, p. 763 (Syl. 5); City of Fort Worth v. Zane-Cetti, Tex.Com.App., 29 S.W.2d 958, p. 962 (Syl. 4); Thompson v. A. J. Tebbe & Sons Co., Tex.Civ.App., 241 S.W.2d 633, 11 Tex. Jur. 766 (Sec. 46).

The rule of decision cited by the defendant is not applicable because the petition does not show that defendant could not contract to pay surgical costs and thus does not show that a cause of action to recover this item had not been alleged.