**FORUM INSURANCE COMPANY,**
Appellant,

v.

**BRISTOL–MYERS SQUIBB COMPANY**
and Medical Engineering Corporation,
Appellees.

No. 09–96–015 CV.

Court of Appeals of Texas,
Beaumont.

Submitted June 27, 1996.

Decided Aug. 29, 1996.

Rehearing Overruled Sept. 19, 1996.

established that appellant said nothing to remind the court of what he thought was an agreement.

Robert L. Klawetter, Lewis E. Henderson, Eastham, Watson, Dale & Forney, Houston, for appellant.

Robert Q. Keith, Keith & Weber, Johnson City, Thomas Ladd, McCarter & English, Newark, NJ, for appellees.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

Appellees Bristol–Myers Squibb (BMS) and Medical Engineering Corporation (MEC) filed this underlying lawsuit on March 19, 1993 against numerous insurance companies, seeking insurance coverage for breast implant claims made against appellees. Following filing of suit, all matters were voluntarily stayed by consent of all parties until October 1993 in an effort to facilitate settlement discussions. On August 13, 1993, ten defendants to this Texas lawsuit filed a declaratory judgment lawsuit in the State of New York, seeking a denial of coverage for breast implant claims. The New York trial court stayed that lawsuit, however, on October 26, 1995, the trial court ordered stay was reversed by an intermediate appellate court (Supreme Court, Appellate Division–First Department). Further appeal has been taken to New York's highest appellate level.

Following appellate court reversal of the trial court's stay order, appellees promptly filed an application for a temporary anti-suit injunction in the 58th Judicial District Court in and for Jefferson County, State of Texas. It is in this 58th District Court that appellees original lawsuit was filed. Appellees sought a temporary anti-suit injunction to prohibit the insurance companies from proceeding with the New York lawsuit, or filing other duplicate lawsuits.

The trial court granted the temporary injunction after hearing on December 19, 1995. Although the injunction applies to approximately eighty (80) named parties, Forum Insurance Company, appellant, is the single party to this appeal.

In 1982, appellee BMS acquired appellee MEC, a manufacturer of smooth-walled silicone breast implants. MEC continues to be a wholly owned subsidiary of BMS. In 1988, MEC purchased the Natural–Y and Aesthetech companies from Cooper Companies. MEC succeeded to the rights and various liabilities of these businesses, which manufactured and distributed polyurethane-covered breast implants. Natural–Y and Aesthetech no longer exist as separate corporate entities.

BMS and MEC have been sued in thousands of lawsuits in Texas and other states, alleging more than 17,000 claims for bodily injury, wrongful death and other damages arising out of silicone breast implants manufactured or sold by MEC, Natural–Y, Aesthetech and others. BMS and MEC filed this lawsuit against numerous insurance companies on March 19, 1993, in Jefferson County, Texas, seeking insurance coverage for these breast implants claims. Though the parties voluntarily stayed this lawsuit to facilitate settlement discussions, the failure of these discussions resulted in a lifting of the stay in the fall of 1993. Appellant, Forum Insurance Company, is a defendant in this lawsuit.

Prior to the stay being lifted, on August 13, 1993, ten of the insurance companies named as defendants in the 58th District Court, filed a declaratory judgment action in New York County, New York. Forum was not a plaintiff in the New York lawsuit but was named as a defendant in that suit. Forum did however file a cross-claim against BMS and Aesthetech alleging certain defensive issues.[1]

The New York plaintiffs (not Forum) named Cooper Companies as a defendant. However those plaintiffs agreed in writing to dismiss Cooper from the New York lawsuit after the Texas court ruled on pending *forum non conveniens* motions. Appellant Forum specifically denied in the New York case that it ever issued an insurance policy to Cooper, and Forum never filed a cross-claim or any

---

1. We observe that none of the insurance companies involved in the New York proceeding have opposed the temporary injunction issued by the 58th District Court, nor have they appealed to this Court.

other claim against Cooper in the New York case. Forum's only cross-claims in New York are against BMS and Aesthetech.

In New York, BMS and MEC filed a motion to dismiss or stay the New York case until the Texas case was resolved. The New York trial court granted the motion, and on March 7, 1994, stayed the New York case based on the "service of suit" provisions in the insurance policies. The New York stay remained in effect until October 26, 1995, when an intermediate appellate court overruled prior case law and reversed the trial court. BMS has appealed that decision to the New York Court of Appeals (New York's highest appellate court). All insurance companies in the New York case which had not previously been sued in Texas were added to the Texas lawsuit. The generic basis of both the Texas lawsuit and the New York lawsuit involves the question of insurance coverage.[2]

Following the dissolution of the New York trial court's stay, by intermediate appellate court decision entered October 26, 1995, BMS and MEC promptly filed an Application for Temporary Injunction in the 58th District Court, triggering a rapid sequence of events:

On November 6, 1995, BMS and MEC filed an Application for Temporary Injunction in the 58th District Court to prohibit the defendants from prosecuting the New York case;

On November 9, 1995, a hearing was held in the 58th District Court at which time representations were made to the court that no need for immediate action was necessary regarding the Application for Temporary Injunction since defendants did not plan to take any action in New York which would affect the Texas court's jurisdiction. No defendant at this hearing objected or disagreed. Therefore, the 58th District Court set the hearing on the Application for Temporary Injunction for December 19, 1995. Forum denies its attendance at the November 9th hearing or that it agreed not to take action in New York;

On November 21, 1995, in New York, Forum requested an immediate restraining order and a show cause order to prohibit BMS and MEC from going forward with the December 19, 1995 hearing scheduled in the 58th District Court. The New York court denied the restraining order, but did issue an Order to Show Cause, ordering BMS and MEC to show cause why the New York court should not enter an injunction prohibiting them from attempting to obtain an injunction in Texas. The New York court set its show cause hearing for December 8, 1995, eleven days before the scheduled hearing in Texas;

On November 22, 1995, Forum filed an identical request for a restraining order in the New York Court Appellate Division. The New York appellate court denied an immediate restraining order, instead, ordered the parties to file briefs by December 8, indicating it would render an expedited ruling by December 15, four days prior to the scheduled Texas hearing;

On December 5, 1995, BMS and MEC requested the 58th District Court of Texas to enter a Temporary Restraining Order prohibiting Forum from taking further action in the New York lawsuit, including the show cause hearing scheduled for December 8, or any other action that would prevent the 58th District Court from going forward with the previously scheduled December 19 hearing;

On December 19, 1995, the 58th District Court held a hearing and orally granted the application for Temporary Injunction, prohibiting Forum and all other defendants from prosecuting the New York lawsuit or filing additional lawsuits concerning the same insurance policies and issues involved in this lawsuit;

On January 2, 1996, the 58th District Court, Judge James Mehaffy Presiding, signed a written Temporary Injunction against named defendants; and

On January 31, 1996, at Forum's request, the trial court entered Findings of

---

**2.** For purposes of this opinion, we state the primary issue generally, however, we recognize that derivatives resulting from coverage determination become more complex through the litigation process.

Facts and Conclusions of Law. We give special notice to the following findings: [3]

4. Plaintiffs face an immediate threat that certain defendants will prosecute the New York lawsuit, and nothing prevents other defendants from filing more duplicate lawsuits in other jurisdictions. If the New York lawsuit is prosecuted or additional duplicate lawsuits are filed in other jurisdictions, the orderly proceeding of this lawsuit will be disrupted and plaintiffs will effectively be deprived of their right to choose the forum to decide their claims. This will result in a multiplicity of lawsuits and vexatious litigation, and will cause irreparable harm to plaintiffs.

5. This court is empowered to enjoin defendants from filing or prosecuting subsequent lawsuits in state and federal courts in Texas and other states, and in the courts of other countries. This court is entitled to proceed to judgment in this case and should protect its jurisdiction by enjoining the filing or prosecution of subsequent lawsuits involving the same controversy.

■ The preceding findings were made prior to and without benefit of *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649 (Tex. 1996). *Harper* now explains, restricts and modifies the criteria and basis for entry of anti-suit injunction. Though *Harper* does not address the standard for reviewing trial court action in issuing anti-suit injunction, we recognize the unchanged standard as that of abuse of discretion, i.e., given the inherent power to issue the anti-suit injunction [4], did Judge James Mehaffy properly, under the totality of circumstances, both in fact and law, clearly abuse his discretion by acting arbitrarily and unreasonably, without reference to guiding rules or principles, or did he misapply the law to the facts?

■ The question presented in *Harper* was whether our Fourteenth Court of Appeals (Houston) correctly affirmed the 113th District Court's entry of anti-suit injunction, on the basis the enjoined suit was vexatious and brought to harass. *See Harper,* 925 S.W.2d at 650–51. In reversing the Court of Appeals and dissolving the injunction, our highest court clearly defined those disjunctive instances where issuance of anti-suit injunction may be determined appropriate.

An anti-suit injunction is appropriate in four instances: 1) to address a threat to the court's jurisdiction; 2) to prevent the evasion of important public policy; 3) to prevent a multiplicity of suits; or 4) to protect a party from vexatious or harassing litigation....

*Harper,* 925 S.W.2d at 651 citing *Gannon v. Payne,* 706 S.W.2d 304, 307 (Tex.1986).

■ Principles of comity require "that courts exercise the power to enjoin foreign suits 'sparingly, and only in very special circumstances.'" *Harper,* 925 S.W.2d at 651 quoting *Christensen v. Integrity Ins. Co.,* 719 S.W.2d 161, 163 (Tex.1986); citing *Gannon,* 706 S.W.2d at 306.

■ Clearly, the invocation of comity requires delicate balancing and scrutiny, for indeed its invasive effect on a foreign sovereign may be viewed with small esteem. Comity, once invoked through anti-suit injunction, can only obtain its full potential and effect through the willingness of the recipient sovereign to acknowledge, accept and abide its issuance.

In Texas, comity has been described as 'a principle of mutual convenience whereby one state or jurisdiction will give effect to the laws and judicial decisions of another.' *New Process Steel Corp. v. Steel Corporation of Texas,* 638 S.W.2d [522], 524 [ (Tex.App.—Houston [1st Dist.] 1982, no writ) ].

*Gannon,* 706 S.W.2d at 306.

Judicial comity is defined:

Principle in accordance with which courts of one state or jurisdiction give effect to

---

3. Judge Mehaffy made numerous findings which we determine superfluous in view of *Golden Rule Ins. Co. v. Harper,* 925 S.W.2d 649 (Tex.1996).

4. *See Gannon v. Payne,* 706 S.W.2d 304, 305 (Tex.1986); *Christensen v. Integrity Ins. Co.,* 719 S.W.2d 161, 163 (Tex.1986); *Admiral Ins. Co. v. Atchison, Topeka & Santa Fe Ry. Co.,* 848 S.W.2d 251, 255 (Tex.App.—Fort Worth 1993, writ denied).

laws and judicial decisions of another state *out of deference and respect,* not obligation. (emphasis added)

BLACK'S LAW DICTIONARY 847 (6th ed.1990).

Thus, as distinguished from full faith and credit, judicial comity involves a courteous willingness among sister states to function adhesively and harmoniously when drawn into legal disputes of common source. Put another way, comity invoked, is an aggressive assertion of authority, tempered with a passive and hopeful expectation of adherence.

Whether the issuance of the anti-suit injunction by the 58th District Court amounted to an abuse of discretion must be viewed through an application and consideration of one or more of the four listed instances. Obviously, the mere filing of suit in the New York forum does not destroy the 58th District Court's jurisdiction to proceed with its pending suit, albeit, the simultaneous proceeding in Texas and New York may well be disturbing, disruptive and inconvenient to the Texas proceeding, jurisdiction remains. Nor was the anti-suit injunction granted "to prevent the evasion of important public policy."

To be an appropriate exercise of discretion, we must determine whether Judge Mehaffy was confronted with and by those "very special circumstances" required to avoid an abuse of discretion. We must determine from the record whether anti-suit injunction is justified to either prevent a multiplicity of suits or to protect all parties from vexation or harassing litigation.

There can be no question that in the present matter, the appropriate courts of the State of New York have full and inherent power and jurisdiction to proceed in the case styled: *Columbia Casualty Company, et al. v. Bristol–Myers Squibb Company, et al.,* Index No. 93–120948. Likewise, there is also no question the 58th District Court of the State of Texas has full power and jurisdiction to proceed in its case styled: *Bristol–Myers Squibb Company, et al. v. AUI Insurance Company, et al.,* Cause No. A–0145,672.

Both the New York lawsuit and the Texas lawsuit have as a core issue, the question of whether BMS and MEC are entitled to insurance coverage for multiple breast implant claims from multiple insurance companies. The Texas lawsuit filed first on March 19, 1993 seeks resolution to this question. The subsequently filed lawsuit, in the State of New York, on August 13, 1993, seeks declaratory determination of that identical issue.

The anti-suit injunction entered by the 58th District Court of Texas operates as an impediment upon the Courts of New York to proceed in that pending matter. The legal impediment flowing from the Texas District Court injunction amounts to a restraint against all defendants in the Texas action from "filing, commencing, or prosecuting any lawsuit or other proceeding, or taking any action, in any state court or federal court...." Further, that, "[a]ll defendants are enjoined from prosecuting or taking any further action in that certain lawsuit filed in New York County, New York, styled *Columbia Casualty Co., et al. vs. Bristol–Myers Squibb, et al.,* Index No. 93–120948, *except as required to do so by an order of the New York trial or appellate courts.*" (emphasis added) [5]

Judge Mehaffy was keenly aware of the inherent power and authority of the New York State Court to proceed as it deemed fit and proper. Judicial honesty dictates our recognition that the anti-suit injunction does of necessity and in fact, affect our sister state's proceedings.

No state or nation can demand that its laws have effect beyond the limits of its sovereignty. *Hilton v. Guyot,* [159 U.S. 113, 163, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895)]; *Laker Airways [Ltd.] v. Sabena, Belgian World Airlines,* [731 F.2d 909, 937 (D.C.Cir.1984)]. Only comity can compel courts to act in a manner designed to advance the rule of law among and between nations. An anti-suit injunction necessarily restricts a foreign court's ability to exercise its jurisdiction. The foreign court cannot be compelled to recognize such an injunction, and if it responds by issuing a similar injunction, no party may be able to obtain a remedy. *Laker Airways [Ltd.] v.*

**5.** Presently pending before New York's highest appellate court is the question relating to the "service of suit" provision contained in relevant insurance policies.

*Sabena, Belgian World Airlines,* 731 F.2d at 927.

*Gannon,* 706 S.W.2d at 306–307.

The upholding of an anti-suit injunction demands a delicate balancing of interest, not only as to parties, but also, and perhaps primarily, the absolute necessity of maintaining an on-going camaraderie and respect between states. There is no escaping the ultimate effect of invoking comity. For comity, without question, carries compelling restrictions once invoked which may or may not be comity, endearing to its recipient.

There are no precise guidelines for determining the appropriateness of an anti-suit injunction or for deciding whether comity should be invoked. The circumstances of each situation must be carefully examined to determine whether the injunction is required to prevent an irreparable miscarriage of justice.

*Gannon,* 706 S.W.2d at 307.

Whether the Texas action or the New York action constitutes either "parallel" or "mirror image" action is no longer a question for consideration or determination. In disapproving, in part, *Admiral Ins. Co.,* 848 S.W.2d at 252, our highest court extinguishes any requirement for differentiation between "parallel proceedings" and "mirror image proceedings." *Harper,* 925 S.W.2d at 651.

■ The touchstone of consideration of anti-suit injunction is first, whether the injunction appropriately addresses one or more of those clearly defined instances set forth in *Harper,* 925 S.W.2d at 650–51. Second, whether the anti-suit injunction was necessary "to prevent an irreparable miscarriage of justice." *Harper,* 925 S.W.2d at 652 citing *Gannon,* 706 S.W.2d at 307.

■ In evaluating the potential for "irreparable miscarriage of justice," the circumstances justifying entry of anti-suit injunction must exceed mere "special circumstances." To justify entry of anti-suit injunction, there must be "very special" and "compelling circumstances." *Christensen,* 719 S.W.2d at

163; *Gannon,* 706 S.W.2d at 306. We thus conclude that in order for the entry of anti-suit injunction to stand, those circumstances considered by Judge Mehaffy in issuing the present anti-suit injunction must have been of such nature and effect that without such relief an "irreparable miscarriage of justice" would occur.

■ The facts and circumstances of the present case fall squarely within the prevention of multiplicity of suit category, having shaded potentials for vexation and harassment. Squarely, the question is, must comity be invoked to avoid a multiplicity of litigation?

According to Forum's brief, there are 286 parties and counsel involved in this Texas litigation. Standing alone, this amounts to only a "special circumstance." There are approximately 135 defendant insurance companies named from various states and forums.[6] This standing alone also amounts to a "special circumstance."

These special circumstances became increasingly more special when five months after the filing of this Texas litigation, ten defendants filed their suits in New York State Court. This New York action triggered the progression of circumstances from "special" to "very special" in that all parties to the Texas lawsuit were made vulnerable, at the election of the New York litigants, to a like suit addressing the primary question of insurance coverage/indemnity in the new forum. There is no question the courts of New York have jurisdiction of that pending matter. However, the "special circumstances" become "very special circumstances" should our sister state, New York, choose to disregard and refuse to recognize the Texas anti-suit injunction. Nothing, other than the appeal presently pending before New York's highest appellate court, prohibits the New York trial court from issuing a similar injunction, thus preventing any party from obtaining a remedy. *See Gannon,* 706 S.W.2d at 306–307 citing *Laker Airways Ltd.,* 731 F.2d

---

**6.** Regarding these insurance companies listed as parties, approximately twenty-one States of the United States are shown as home offices for these companies. Several companies have resi-

dence in the United Kingdom and Bermuda. Several defendant companies are listed as "address unknown."

at 927. Clearly, this results in a "very special circumstance," which evolves into a "most compelling circumstance" when considering those potentials existing outside the protective sphere of anti-suit injunction. Other than the present anti-suit injunction, we are aware of no restraint nor prohibition against parties to the Texas litigation from pursuing a multiplicity of actions in multiple states or forums, resulting in a vexatious and no doubt harassing race toward judgment, for indeed a judgment transcends comity consideration, receiving its enforceable power and effect through the requirement of full faith and credit pursuant to our United States Constitution. U.S. CONST. art. IV, § 1. We believe the facts and circumstances of our present case provide the ideal scenario justifying invocation of comity through anti-suit injunction. Our Supreme Court in *Harper* does not discuss nor address the "clear equity" requirement set forth in *Christensen*, 719 S.W.2d at 163, therefore we view such requirement as intact and applicable. *Harper*, 925 S.W.2d at 649.

It is not the similarity, the parallel or mirror image proceedings in Texas and New York which compels our determination that "clear equity" favors the Texas court's intervention, but rather "clear equity" favors all parties seeking a completion and finality to their dispute in a single proceeding without the vexation of potentially multiplicitous or harassing litigation. Though no party to the New York proceeding, other than appellant Forum, takes appeal from the trial court's entry of anti-suit injunction, we do not subjectively minimize Forum's posture here. We do however, determine that under the "very special" and "compelling" circumstances existing herein, "clear equity" favors the issuance of anti-suit injunction for the protection of multiple parties against the potential of multiple litigation, the result of which would be clearly vexatious or harassing to all.

Forum brings seven points of error challenging the trial court's issuance of anti-suit injunction on various grounds. Points five and six are challenges to the evidence supportive of the trial court's action. Having previously set forth the evidentiary basis for the trial court's decision, we overrule these points. Points of error one, two and four address the substantive basis of the trial court's ruling. Having determined the trial court made a proper application of law to the facts, we overrule these points.

In point of error three, Forum contends the trial court erred as a matter of law because BMS and MEC have an adequate remedy at law. *Harper* clearly sets forth that anti-suit injunction is appropriate "to prevent a multiplicity of suits." *Harper*, 925 S.W.2d at 651. What adequate remedy is available to appellees to prevent any of these numerous appellants from pursuing like action in other forums? Anti-suit injunction is designed to *prevent* this. Point of error three is overruled.

Finally, Forum contends appellees are guilty of inequitable conduct in attempting an "end run" around the New York proceedings, claiming an appellate court in New York has "affirmed Forum's right to proceed with its New York action." A final resolution of that question still pends before the New York Court of Appeals (New York's highest appellate tribunal). From our perspective, colloquially speaking, the "end run" if any, was made by these ten defendant insurance companies, being subject to Texas Court jurisdiction, filing a like suit in the State of New York. Subsequently, those companies yielded to the 58th District Court's anti-suit injunction. This yielding in no way prevents the New York Court of Appeals from reaching its ultimate ruling on the important question of the meaning and effect of the "service of suit" provision contained in the insurance policies, which will no doubt affect future litigation. We fail to find support for Forum's allegation of inequitable conduct. Furthermore, we are left confused by appellant's request: "Forum therefore respectfully requests that this Court respect the decision and order of the Appellate Division and permit Forum to proceed in New York with its action." We believe to do so would amount to a discourteous ignoring of the New York Court of Appeals power and authority to resolve the ultimate pending issue. We overrule point of error seven.

We find and determine the 58th District Court did not abuse its discretion in entering the anti-suit injunction enjoining all parties to the declaratory judgment proceeding filed in New York from pursuing further trial court action, nor, do we find abuse of discretion by the trial court in restraining all defendants in the Texas action from "filing, commencing, or prosecuting any lawsuit or other proceeding, or taking any action, in any state court or federal court ..." regarding the subject matter presently before the 58th District Court. The trial court issuance of anti-suit injunction is affirmed.

AFFIRMED.