NUMBER
13-02-231-CV

 

                             COURT
OF APPEALS

 

                   THIRTEENTH
DISTRICT OF TEXAS

 

                                CORPUS
CHRISTI

___________________________________________________________________

 

LONDON MARKET INSURERS,                                               Appellant,

 

                                                   v.

 

AMERICAN HOME ASSURANCE COMPANY, ET AL.,                Appellees.

___________________________________________________________________

 

                        On
appeal from the 105th District Court

                                  of
Nueces
 County, Texas.

__________________________________________________________________

 

                                   O
P I N I O N

 

       Before
Chief Justice Valdez and Justices Rodriguez and Dorsey[1]

                                Opinion
by Justice Rodriguez

 








This is an interlocutory appeal of an anti-suit injunction entered in
a declaratory judgment action involving an insurance coverage dispute.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(4) (Vernon Supp. 2002).  The district court in Nueces County, Texas,
enjoined appellants, Certain Underwriters at Lloyd=s, London, London
Market Insurance Companies (London Market Insurers), from filing or pursuing
any insurance coverage declaratory judgment action against appellees, Asarco,
Incorporated (Asarco, Inc.), Lac D= Amiante du Quebec,
Ltee (LAQ), and Capco Pipe Company, Inc. (CAPCO), in any other jurisdiction
that would raise the same issues as those raised in the Texas action.  By three issues, London Market Insurers
contend the trial court abused its discretion in issuing the anti-suit
injunction.  We affirm.

I.  Background

On May 21, 2001, pursuant
to section 37.001 of the Texas Civil Practice & Remedies Code, Asarco,
Inc., filed a declaratory judgment action in Texas.  See Tex.
Civ. Prac. & Rem. Code Ann. '' 37.001-.011 (Vernon 1997 & Supp.
2003).  Generally, Asarco, Inc., sought Aa
judicial determination of the rights and duties of [Asarco, Inc.], and each of
the defendants with respect to an actual controversy arising out of the
Policies issued to [Asarco, Inc.], by the Defendants.@  Specifically, Asarco, Inc., sought a declaratory
judgment to determine insurance coverage for alleged injury arising from
exposure to asbestos at its industrial facilities in Texas.  Asarco, Inc., identified the underlying
claims as premises claims.








On October 2, 2001, London Market Insurers filed suit in New York
County, New York, against Asarco, Inc., LAQ and CAPCO.  They sought a declaratory judgment to
determine insurance coverage for products liability claims allegedly resulting
from exposure to asbestos in products that LAQ and CAPCO introduced into the
stream of commerce.  They brought the
action against Asarco, Inc., as the corporate parent and/or affiliate of LAQ
and CAPCO.

On November 5, 2001, after the New York action was filed, Asarco,
Inc., amended its petition to add plaintiffs, LAQ and CAPCO.  By this amended petition, appellees sought a
declaratory judgment to determine insurance coverage for alleged injuries
caused by asserted exposure to asbestos fiber or asbestos-containing materials
produced or sold by LAQ or CAPCO. 
Appellees referred to these underlying claims as products claims.








On March 15, 2002, appellees filed a motion for an anti-suit
injunction asking the Texas court for an injunction precluding London Market
Insurers from prosecuting the New York action and any other actions relative to
interpretation of the insurance policies at issue.  On April 18, 2002, the Nueces County District
Court issued an anti-suit injunction against London Market Insurers.  The trial court found that appellees Aestablished that the
New York Action present[ed] a threat to [its] jurisdiction and that issuance of
an anti-suit injunction [was] necessary to prevent the evasion of important
Texas public policy and to prevent a multiplicity of suits.@  It further found that appellees Aestablished the
existence of very special circumstances and the potential for an irreparable
miscarriage of justice to warrant the issuance of an anti-suit injunction.@  The trial court enjoined London Market
Insurers from Afiling or pursuing any
insurance coverage declaratory judgment action against [Asarco, Inc., LAQ, and
CAPCO] in any other jurisdiction that would raise the same issues as those in
this action, specifically including without limitation the action . . .
currently pending in . . . the State of New York, County of New York.@

                                             II.  Standard of Review








Issuance of an anti-suit injunction rests within the sound discretion
of the trial court.  Gannon v. Payne,
706 S.W.2d 304, 305 (Tex. 1986); Davis v. Huey, 571 S.W.2d 859, 861-62
(Tex. 1978); Am. Int=l Specialty Lines Ins.
Co. v. Triton Energy Ltd., 52 S.W.3d 337, 339 (Tex. App.BDallas 2001, pet. dism=d w.o.j.); Fina Oil
& Chem. Co. v. Alonso, 941 S.W.2d 287, 290 (Tex. App.BCorpus Christi 1996,
no writ) (citing Walling v. Metcalfe, 863 S.W.2d 56, 57 (Tex.
1993)).  AA trial court abuses its discretion when it acts
arbitrarily and unreasonably, without reference to guiding rules or principles,
or misapplies the law to the established facts of the case.@  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985).  A reviewing court must consider A[w]hether the trial
court=s action is so
arbitrary that it exceeds the bounds of reasonable discretion,@ but the appellate court
may not substitute its judgment for that of the trial judge.  City of San Antonio v. Rankin, 905
S.W.2d 427, 430 (Tex. App.BSan Antonio 1995, no
writ); see Tex. Foundries v. Int=l Moulders &
Foundry Workers= Union, 151 Tex. 239, 244-45, 248
S.W.2d 460, 463 (1952).  Drawing all
legitimate inferences from the evidence in the light most favorable to the
trial court=s ruling, where Asome basis@ exists on which the
trial court could have properly held as it did, there can be no abuse of
discretion.  See Munson v. Milton,
948 S.W.2d 813, 815 (Tex. App.BSan Antonio 1997, pet.
denied); City of San Antonio, 905 S.W.2d at 430. 

III.  Analysis

A.  Anti-suit Injunction

An anti-suit injunction is appropriate in four instances:  1) to address a threat to the court's jurisdiction;
2) to prevent the evasion of important public policy; 3) to prevent a
multiplicity of suits; or 4) to protect a party from vexatious or harassing
litigation.  Golden Rule Ins. Co. v.
Harper, 925 S.W.2d 649, 651 (Tex. 1996) (per curiam); Gannon,
706 S.W.2d at 307. 








Texas courts have the power to prevent persons from proceeding with
litigation filed in other state courts.  Golden
Rule, 925 S.W.2d at 651; Gannon, 706 S.W.2d at 305-06; Monsanto
Co. v. Davis, 25 S.W.3d 773, 778 (Tex. App.BWaco 2000, pet. denied); Mfrs. Hanover Trust
Co. v. Kingston Investors Corp., 819 S.W.2d 607, 612 (Tex. App.BHouston 1991, no
writ).  However, the principle of comity
requires that courts exercise this equitable power sparingly, and only in very special
circumstances.  Christensen v.
Integrity Ins. Co., 719 S.W.2d 161, 163 (Tex. 1986).  Thus, the party seeking the injunction has
the burden to show that a clear equity demands the injunction.  Id.; Harbor Perfusion,
Inc. v. Floyd, 45 S.W.3d 713, 718 (Tex. App.BCorpus Christi 2001,
no pet.).  Therefore, the applicant must
also demonstrate the potential for an irreparable miscarriage of justice in
order to obtain the anti-suit injunction. 
Golden Rule, 925 S.W.2d at 651-52 (mirror image proceedings not
irreparable miscarriage of justice); Triton, 52 S.W.3d 337, 341
(appellate court affirmed trial court=s issuance of
anti-suit injunction based, in part, on service of suit clause where insurer
agreed to abide by final determination of jurisdiction selected by
policyholder); Forum Ins. Co. v. Bristol-Myers Squibb Co., 929 S.W.2d
114, 119 (Tex. App.BBeaumont 1996, writ
denied) (clear equity favors all parties seeking completion and finality to
dispute in single proceeding without vexation of potentially multiplicitous or
harassing litigation).

B.  Threat to Jurisdiction

By its second issue, London Market Insurers contend the trial court
abused its discretion because the evidence does not support a finding that the
proceeding in New York posed a threat to the court=s jurisdiction in
Texas.  London Market Insurers
argue that because the action before the Texas court was limited to premises
liability coverage claims at the time the New York suit was filed, the New York
action which involved only products liability coverage could not be regarded as
a threat to the jurisdiction of the Texas court.  They contend the New York action was the
first-filed action relating to asbestos-products claims, and, thus, the evidence could not
support a finding that the proceeding in New York posed a threat to
jurisdiction in Texas.








Generally, where an action could be filed in either of two courts, the
Afirst court acquiring
jurisdiction will retain jurisdiction.@  Armstrong v. Steppes Apts., Ltd., 57
S.W.3d 37, 49-50 (Tex. App.BFort Worth 2001, pet.
denied) cert. denied, 70 U.S.L.W. 3789, 122 S.Ct. 2645, 153 L.Ed.2d 823
(2002); see  Perry v. Del
 Rio, 66 S.W.3d 239, 252-53 (Tex. 2001); Gurvich v. Tyree, 694 S.W.2d 39, 42
(Tex. App.BCorpus Christi 1985,
no writ).  "[W]here jurisdiction is
once lawfully and properly acquired, no subsequent fact or event in the
particular case serves to defeat that jurisdiction."  Isbell v. Kenyon-Warner Dredging Co.,
113 Tex. 528, 261 S.W. 762, 763 (1924); see Haginas v.
Malbis Memorial Found., 163 Tex. 274, 278, 354 S.W.2d
368, 371 (1962).  An exception to this
rule applies only when an amended petition presents a new cause of action that
does not relate back to the original cause of action and amounts to the beginning
of a new suit.  Isbell, 113 Tex.
at 531, 261 S.W. at 763.








London Market Insurers contend the new allegations in appellees= amended petition
regarding asbestos-related products claims do not arise out of the same
transaction or occurrence as the premises claims, and, therefore, cannot relate
back to the original petition because they are new causes of action.[2]  See Isbell, 113 Tex. at 531, 261 S.W.
at 763-64.  However, in its original
petition, Asarco, Inc., asked for a declaration of London Market Insurers= duty to indemnify and
duty to defend claims of asbestos-related bodily injuries based on alleged
exposure to asbestos at its facilities. 
Subsequent to London Market Insurers filing their action in New York on
coverage issues related to products liability claims, Asarco, Inc., amended its
petition to add a request for declaratory relief regarding London Market
Insurers= duties
under the same insurance policies, to indemnify and defend against asbestos
products claims allegedly resulting from exposure to asbestos through products
mined, milled, manufactured or sold by LAQ or CAPCO, subsidiaries of Asarco,
Inc.








The first-filed declaratory judgment action filed in Texas sought to
establish existing rights, status, or other legal relationships regarding
asbestos claims under the insurance policies at issue.  See Tex.
Civ. Prac. & Rem. Code ' 37.002(b) (Vernon
1997) (purpose of declaratory judgment Ais to settle and to
afford relief from uncertainty and insecurity with respect to rights, status,
and other legal relations; and it is to be liberally construed and administered@); City of Garland
v. Dallas Morning News, 22 S.W.3d 351, 357 (Tex. 2000).  This action sought declaratory judgment
regarding this larger issue of coverage under the policies for asbestos-related
bodily injury claims.  The amended
petition sought the same relief.  The
premises claims arose from alleged exposure to asbestos at Asarco, Inc.=s facilities, and the
product claims arose from alleged exposure to asbestos for which appellees were
alleged to be legally responsible.  In
Texas, appellees sought a judicial determination of their rights to
indemnification and defense under the policies at issue.  In both the original petition and the amended
petition, appellees asked the Texas court to determine liability provisions of
the same insurance policies, liability provisions relating to alleged injuries
resulting from asbestos exposure.  The
coverage at issue was for asbestos-related claims regardless of how they were
pled, as asbestos products claims or asbestos premises claims.  Thus, the Texas action was the first-filed
action on coverage issues that relate to exposure to asbestos, and the claims
in the amended petition were not new causes of action, but, rather, were claims
that relate back to the original petition. 
See Isbell, 113 Tex. at 531, 261 S.W. at 763.

Therefore, we conclude the Texas court=s jurisdiction was threatened by the New York
action which also involved asbestosis insurance coverage issues under the same
policies.  See id.  The threshold issue in both actions involved
claims resulting from alleged exposure to asbestos and resultant injury.  The generic basis of both the Texas
declaratory judgment action and the New York action involved the question of
insurance coverage.  Forum Inc.,
929 S.W.2d at 119 (declaratory judgment actions in Texas and New York sought
determination of insurance coverage for breast implant claims on same
policies).  On the basis that all
coverage issues related to exposure to asbestos were brought by the original
petition, and that the product claims were brought in by virtue of the
relation-back doctrine, we conclude the Texas court obtained original
jurisdiction over the entire coverage dispute.








London Market Insurers also argue that the relation back doctrine as
expressed in Isbell does not apply in this case because the doctrine is
derived from a statute and applies only to limitation issues.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 16.068 (Vernon 1997);
Isbell, 113 Tex. at 531, 261 S.W. at 763.  We agree that the relation back doctrine is
normally used to save cases otherwise barred by a statute of limitations, and
that the issue of limitations has not been brought in this appeal.  However, the relation back doctrine has been
applied at common law in different instances where there was a comparable or
lesser degree of commonality than in this case between the cause of action in
the amended petition and that in the original petition.[3]  We conclude, under the facts of this case,
that the relation back doctrine can be fairly applied in this instance.








Because we have concluded the evidence establishes there is a threat
to the court=s jurisdiction, an
anti-suit injunction is appropriate under the guidelines of Golden Rule.  See Golden Rule, 925 S.W.2d at
651(anti-suit injunction appropriate in four non-inclusive instances).  The trial court=s decision in this matter did not exceed the
bounds of  reasonable discretion.  See City of San Antonio, 905 S.W.2d at
430.  Its decision, as supported by the
evidence presented and made in accordance with the principles established in Golden
Rule, is proper for issuance of an anti-suit injunction.  See Golden Rule, 925 S.W.2d at
651.  Drawing all legitimate inferences
from the evidence in the light most favorable to the trial court=s ruling, we conclude
there was Asome basis@ on which the trial
court could have properly held as it did; thus, there can be no abuse of
discretion.  See Munson, 948
S.W.2d at 815.  Accordingly, we overrule
London Market Insurers= second issue.

Furthermore, having determined the trial court did not abuse its
discretion in determining there was a jurisdictional threat, we need not
address London Market Insurers remaining arguments that the trial court erred
in concluding that:  (1) the New York
action evades Texas interests; and (2) a multiplicity of suits will be
prevented.  See Golden Rule, 925
S.W.2d at 651. 

C.  Irreparable Miscarriage of
Justice

By their third issue, London Market Insurers assert the trial court
erred in finding the New York action may establish potential for an irreparable
miscarriage of justice.  They first claim
the trial court erred because the New York action was the first-filed suit, and
the Texas amendment cannot relate back to the original petition.  Based on our analysis above, however, we find
this argument to be unpersuasive.








London Market Insurers next contend that New York is the more
appropriate forum for contract disputes with respect to the products claims at
issue because of:  (1) the number of
contacts in New York, which are not replicated in Texas; (2) the Astrong likelihood@ that the court will
apply New York law to the coverage issues; and (3) the long and extensive
history that the New York courts have in addressing these policies, claims, and
parties.  London Market Insurers rely on Gulf
Oil Corp. v. Gilbert, 330 U.S. 501, 507-08 (1947) (superceded by 23
U.S.C.A. ' 1404 (a) (West
1993)).  Gulf Oil, however, involved
a federal tort action wherein the United States Supreme Court considered
multiple and varied factors in determining a forum non conveniens venue
issue.  See id.  The factors included consideration of the
principal location of the insured risk, the availability of sources of proof,
the state=s nexus with subject
matter of action, and the substantive law to be applied.  See id.; see also Tex. Civ. Prac. & Rem. Code Ann. ' 71.051(b) (Vernon
Supp. 2003) (factors adopted from Gulf Oil to be considered in applying
forum non conveniens doctrine in Texas).  Here we are determining the appropriateness
of an anti-suit injunction.  We have no
precise guidelines.  Therefore, A[t]he circumstances of
each situation must be carefully examined to determine whether the injunction
is required to prevent an irreparable miscarriage of justice.@  Forum Ins., 929 S.W.2d at 119 (quoting
Gannon, 706 S.W.2d at 307).  








We have already concluded that the injunction appropriately addressed
one of the clearly defined instances set forth in Golden Rule, that the
New York action constituted a threat to the Texas court=s jurisdiction.  See Golden Rule, 925 S.W.2d at
651.  The second touchstone of
consideration in anti-suit injunctive relief is whether the injunction was necessary
Ato prevent an
irreparable miscarriage of justice.@  Forum Ins., 929 S.W.2d at 119 (citing Golden
Rule, 925 S.W.2d at 652).

In evaluating the
potential for Airreparable
miscarriage of justice,@ the circumstances
justifying entry of anti-suit injunction must exceed mere  Aspecial circumstances.@  To justify entry of anti-suit injunction,
there must be Avery special@ and Acompelling
circumstances.@  (citations omitted).  We thus conclude that in order for the entry
of anti-suit injunction to stand, those circumstances considered . . . in
issuing the present anti-suit injunction must have been of such nature and
effect that without such relief an Airreparable
miscarriage of justice@ would occur.

 

Id.

The trial court, in this case, found that appellees Aestablished the
existence of very special circumstances and the potential for an irreparable
miscarriage of justice to warrant the issuance of an anti-suit injunction.@  The evidence establishes, and London Market
Insurers do not challenge, the existence of a service of suit clause in each
policy.  By way of this service of suit
provision, London Market Insurers agreed to submit to the jurisdiction of any
court of competent jurisdiction within the United States, to comply with all
requirements necessary to give the court jurisdiction, and to abide by the
final decision of the court or of any appellate court in the event of an
appeal.  Thus, pursuant to the terms of
the clause, London Market Insurers agreed to submit to the jurisdiction
selected by appellees and agreed to be bound by the final decision of the trial
court or of this Court.  See Triton,
52 S.W.3d at 341.  








Because London Market Insurers filed suit in New York after appellees
instituted suit on coverage issues in Texas, the record supports the trial
court=s determination that
very special circumstances did exist, that London Market Insurers violated the
service of suit clause when they filed the declaratory judgment insurance
coverage action in New York after appellees did so in Texas.  See id.  The trial court found that appellees Aestablished the
existence of very special circumstances and the potential for an irreparable
miscarriage of justice to warrant the issuance of an anti-suit injunction.@  The trial judge framed his decision by
referencing the principles for anti-suit injunctions set forth by the Texas
Supreme Court in Golden Rule.  See
id. (citing Golden Rule, 925 S.W.2d at 651).  We cannot conclude the trial court abused its
discretion in granting the anti-suit injunction against London Market
Insurers.  The third issue is overruled.

Based on our analysis of London Market Insurers= second and third
issues, we also overrule their first issue which generally asserts the trial
court abused its discretion in issuing the anti-suit injunction.                              .

IV.  Conclusion

Accordingly, the trial court=s issuance of the
anti-suit injunction is affirmed.

NELDA
V. RODRIGUEZ

Justice

 

Dissenting Opinion by
Retired Justice J. Bonner Dorsey.

 

Opinion delivered and
filed

this 9th day of
January, 2003.

 

* * * * * * * * *

 



 




 
 
 
 
 
 
 
 
 




 

 

 

 

 

 

 

                                   NUMBER 13-02-231-CV

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI

 

 



LONDON MARKET INSURERS,                                               Appellant,

 

                                                   v.

 

AMERICAN HOME ASSURANCE COMPANY, ET AL.,                Appellees.

 

 



                        On appeal from the 105th District Court

                                  of Nueces County, Texas.

 



 

                            DISSENTING OPINION

 

       Before Chief Justice Valdez
and Justices Rodriguez and Dorsey[4]

                          Dissenting Opinion by
Justice Dorsey

 












The Texas Supreme Court has written three times since 1986 on
the propriety of Texas judges enjoining actions in courts in jurisdictions
other than Texas[5].  In all of the cases, jurisdiction first
attached in the Texas court and the same matters were the subject of litigation
in both the Texas and foreign court.  In
each of the three cases, after considering the demands of comity, the supreme
court has concluded that the trial judge abused his discretion and the
injunction should not have issued.  The
rule that is synthesized from these cases is that only in extraordinary cases
would an injunction be proper.  Because I
do not find that such special circumstances exist in the instant case, I
believe the trial court abused its discretion and should not have issued the
injunction.  I would reverse.












The latest instruction from the supreme court is in Golden
Rule Ins. Co. v. Harper, 925 S.W.2d 649 (Tex. 1996) per
curiam.   In it Mr. Harper sued his
medical insurance carrier, Golden Rule Insurance Co., in Harris County, Texas,
for benefits it declined to pay for Mrs. Harper=s treatments.  Golden Rule filed a declaratory judgment
action in Illinois, where Harper resides and the policy was issued to determine
if the treatment Mrs. Harper sought was experimental, and thus excluded from
coverage.  Harper then sought and
received a temporary injunction against Golden Rule from proceeding in the
Illinois action.  The court of appeals
affirmed and found that the Illinois action only consisted of defensive issues
and was the Amirror image@ of the Texas
suit.  The court of appeals reasoned that
the duplication of effort in the two courts would create havoc with resulting
waste of judicial resources weighed heavily in favor of the anti-suit
injunction.

The supreme court disagreed, and held that such reasoning is
not supported by its decisions.  It said,
AIn Gannon,
we did not accept the argument that pursuing a declaratory judgment action in a
Canadian court on issues that could have been brought as defenses in the first
filed Texas proceeding was a waste of resources, let alone that such additional
expense would justify an injunction against the Canadian proceedings.  Gannon, 706 S.W.2d at 307-08.  Nor did we agree that the risk of
inconsistent judgments was a significant one, . . .@  Golden Rule, 925 S.W.2d at 651.

The court additionally refused to accept the distinction made
by the court of appeals between a Amirror image@ proceeding and
an Aordinary single
parallel@ proceeding,
where the court of appeals held that although an ordinary single parallel
proceeding could not be enjoined  a Amirror image@ proceeding
could be.  

We reject the
implicit distinction of the court below between single parallel proceedings and
mirror image proceedings, and we disapprove the language of Admiral Ins.
[Co. v. Atchison, Topeka & Santa Fe Ry, 848 S.W.2d
251, 256 (Tex. App.BFort Worth
1993, writ denied)], to the extent it offers such a rationale.  This approach fails to give adequate weight
to the principle of comity and threatens to allow the exception to swallow the
rule.  As we have said before, Aif the
principle of comity is to have any application, a single parallel proceeding .
. . cannot justify issuing an anti-suit injunction.@  Gannon, 796 S.W. 2d at 307.  Such a suit must be allowed to proceed
absent some other circumstances which render an injunction necessary to Aprevent an
irreparable miscarriage of justice.@  Id. 
Merely because the suits present identical issues does not make their
proceeding an Airreparable
miscarriage of justice.@  

 

Golden
Rule,
925 S.W.3d at 651-52 (emphasis added).












Turning to the instant case, although there is some question
whether the actions in Texas and New York are so similar that the foreign suit
threatens the local court=s jurisdiction,
I will assume it to be so.  The Texas court
acquired jurisdiction first and thus has dominant jurisdiction in the
matter.  The question then is what are
the special circumstances that require the injunction to avoid an irreparable
miscarriage of justice.  The trial judge
so concluded so in his order, but we must examine the evidence and
circumstances to determine if his decision was correct.

The majority finds special circumstances from a breach of a
policy provision by London Market Insurers, by which they agreed to submit to
the jurisdiction of any court of competent jurisdiction within the United
States.  By this agreement, London Market
Insurers agreed to submit to a jurisdiction selected by appellees and to be
bound by the judgment.[6]  

However, I do not find that to be such a special circumstance
so as to constitute an irreparable miscarriage of justice by the breach of the
provision.  I believe such a breach, if
indeed it is, could be remedied by a later action for damages.

Accordingly, I would reverse the trial court and dissolve the
injunction.  Because the majority does
not, I respectfully dissent.

J.
BONNER DORSEY

Justice

Dissenting Opinion
delivered and filed

this 9th day of
January, 2003.



 

 











[1]Retired
Justice J. Bonner Dorsey
assigned to this Court by the Chief Justice of the Supreme Court of Texas
pursuant to Tex. Gov=t Code Ann. '
74.003 (Vernon
1998).





[2]London
Market Insurers also contend the amended petition cannot relate back to the
date of the original petition because the amendment adds plaintiffs LAQ and
CAPCO, parties that claim relief only from asbestos products claims.  London Market Insurers, however, provide no argument
or authority in support of this argument, therefore, it is not before us in
this appeal.  See Tex. R. App. P.  38.1(h).





[3]See,
e.g.,  Hallaway
v. Thompson, 148 Tex. 471, 481-82, 226 S.W.2d 816, 822-23 (Tex. 1950)
(amendment names same defendant, but changes capacity in which he is sued); Conn
v. Campbell, 119 Tex. 82, 87-88, 24 S.W.2d 813, 817-18 (1930) (orig.
proceeding) (where jurisdiction attaches, court has power to permit amendment
of pleadings that relate back to the date originally filed insofar as any
jurisdictional question is concerned); Cleveland v. Ward, 116 Tex. 1,
17-18, 285 S.W.1063, 1170 (1926) (orig. proceeding) (same); Isbell v.
Kenyon-Warner Dredging Co., 113 Tex. 528, 261 S.W. 762, 763 (1924) (jurisdiction,
once lawfully and properly acquired, not destroyed by amended petition that
increased amount in controversy); Chien v. Chen, 759 S.W.2d 484, 487 & 493
(Tex. App.BAustin 1988, no
writ) (applied relation back doctrine to amendment adding partners as
plaintiffs); Ferguson Seed Farms, Inc., v. Ferguson, 52 S.W.2d 354,
356-57 (Tex. Civ. App.BEastland 1932,
no writ) (citing several cases for proposition that pleading based on Asame
contract@ as original
pleading relates back to original pleading); Threadgill v. Fed. Land Bank of
Houston, 26 S.W.2d 345, 347-48 (Tex. Civ. App.BFort
Worth 1930, writ dism=d) (when
defendant=s defense
increased amount in controversy, court concluded jurisdiction was not destroyed
because a court, having once acquired jurisdiction for one purpose, has right
to have all properly involved questions litigated in that suit).





[4]Retired
Justice J. Bonner Dorsey
assigned to this Court by this Chief Justice of the Supreme Court of Texas
pursuant to Tex. Gov=t Code Ann. '
74.003 (Vernon 1998).





[5]  Gannon v. Payne, 706 S.W.2d 304 (Tex.
1986) (J. Kilgarlin writing for a unanimous court); Christensen v. Integrity
Ins. Co., 719 S.W.2d 161 (Tex.
1986) (C.J. Hill writing for a unanimous court); and Golden Rule Ins. Co. v.
Harper, 9254 S.W.2d 649 (Tex.
1996) (per curiam).  





[6]
Although the recent Dallas case of Amer. Int'l  Specialty Lines Ins. Co. v. Triton Energy,
Ltd., 52 S.W.3d 337 (Tex. App.BDallas
2001, pet dism'd w.o.j.), mentioned the existence of such a Aservice
of suit@ provision as a
partial justification for the anti suit injunction, I disagree with the
conclusion.  The case was not reviewed by
the supreme court because it lacked jurisdiction.